UNITED STATES, Appellee,

v.

Michael A. KLINE, Private U.S. Army, Appellant.

No. 46523.
SPCM 17647.

U.S. Court of Military Appeals.

March 3, 1986.

For Appellant: *Lieutenant Colonel William P. Heaston* (argued); *Colonel William G. Eckhardt, Major Paul J. Luedtke, Captain Michael D. Graham, Captain Harry L. Williams* (on brief); *Colonel R. Rex Brookshire, II.*

For Appellee: *Captain Michael W. Hoadley* (argued); *Colonel James Kucera, Lieutenant Colonel John T. Edwards, Lieutenant Colonel Thomas M. Curtis, Captain Patrick J. Cunningham* (on brief); *Lieutenant Colonel Adrian J. Gravelle* and *Captain Jessica A. Polley.*

*Opinion of the Court*

EVERETT, Chief Judge:

In the early morning hours of November 29, 1981, appellant was driving the wrong way on a one-way street at Fort Meade, Maryland, and was observed by a military policeman. As Kline turned onto Mapes Avenue in front of the policeman's vehicle, the latter turned on the emergency lights of his police car and gave a short siren blast. In response, Kline speeded up; and a chase ensued as his car reached a speed of 102 miles per hour down the avenue. At the intersection of Mapes Avenue and Maryland Route 175, his car skidded, hitting a curb and road marker; and as a result of the impact, his passenger suffered facial lacerations and contusions. Appellant left the car and disappeared.

At his special court-martial, appellant pleaded guilty to reckless driving[1]; wrong-

---

1. Article 111, Uniform Code of Military Justice, 10 U.S.C. § 911.

fully leaving the scene of an accident[2]; and eluding a police officer, in violation of Title 21, Section 904 of the Maryland Code as assimilated by the Assimilative Crimes Act, 18 U.S.C. § 13, which in turn is incorporated by the "crimes and offenses not capital" clause of Article 134 of the Uniform Code of Military Justice, 10 U.S.C. § 934. The sentence awarded by a court-martial composed of officers included a bad-conduct discharge and confinement for 4 months. The convening authority approved these results except for confinement in excess of 45 days.

Before the Court of Military Review, 15 M.J. 805—as at trial—appellant unsuccessfully argued that the offense charged under the Assimilative Crimes Act—fleeing a police officer—was preempted by Article 95, UCMJ, 10 U.S.C. § 895, which prohibits resisting apprehension. *Cf. United States v. Irvin*, 21 M.J. 184 (C.M.A. 1986). On his petition to this Court, we denied review of that issue; but we specified an issue concerning whether the military policeman who pursued Kline qualified as a "police officer" for purposes of prosecution under the Maryland Vehicle Law, as incorporated by the Assimilative Crimes Act. 17 M.J. 95.

I

■ Before we address that issue, one other matter requires comment. During a session under Article 39(a), UCMJ, 10 U.S.C. § 839(a), that preceded trial, the military judge inquired as to the existence of exclusive or concurrent jurisdiction over the place where the alleged violation of the Assimilative Crimes Act had occurred. Trial counsel represented that exclusive jurisdiction existed at that location; and the defense counsel agreed. If appellant had pleaded not guilty, this colloquy might have been inadequate to sustain the Government's burden of establishing Federal jurisdiction over the situs of the crime. *United States v. Irvin, supra.* However, in a prosecution based on the Assimilative

Crimes Act, a plea of guilty admits the requisite element of "exclusive or concurrent [Federal] jurisdiction" over the situs of the crime.

■ Here the providence inquiry did not specifically deal with the jurisdictional status of Fort Meade. *Cf. United States v. King*, 3 M.J. 458 (C.M.A.1977); *United States v. Green*, 1 M.J. 453 (C.M.A.1976). However, because the existence of Federal jurisdiction over the situs—an element of the crime—was not a matter as to which the accused would have personal knowledge and because defense counsel agreed with trial counsel's representation as to jurisdiction, any defect in the providence inquiry is too minor to warrant setting aside the plea of guilty.

II

The section of the Maryland Code which the Government sought to assimilate—§ 21–904—provides:

(a) *Scope of section.* This section applies when a police officer gives a signal to stop, whether by hand, voice, emergency light, or siren, if:

(1) The police officer is in uniform, prominently displaying his badge or other insignia of office; and

(2) The police officer, when in a vehicle, is in a vehicle appropriately marked as an official police vehicle.

(b) *Driver to obey signal.* If given a visual or audible signal by a police officer to stop his vehicle, the driver of a vehicle may not attempt to elude the police officer, whether:

(1) By willfully failing to stop his vehicle;

(2) By fleeing on foot; or

(3) Otherwise, by any other means.

Under § 11–147:

"Police officer" means an officer authorized to direct or regulate traffic or to make arrests for violations of any of the

---

**2.** *See* Article 134, UCMJ, 10 U.S.C. § 934; Form Specification 152, App. 6c, Manual for Courts-

Martial, United States, 1969 (Revised edition).

provisions of the Maryland Vehicle Law or of local or other traffic laws or regulations.

Counsel have not cited, nor have we located, any Maryland case indicating whether this term "police officer" would encompass a law-enforcement officer who does not derive his authority from the law of Maryland. Presumably, the Maryland legislature was only concerned with the enforcement of the traffic laws and regulations of that State and of its political subdivisions. Probably the reference to "other" traffic laws or regulations encompasses only those promulgated by the State, its counties, cities, and other subdivisions.

Moreover, it is unclear that a military policeman would have authority to enforce these regulations on the streets and highways of Maryland even as against servicemembers. Thus, if a servicemember were violating the Maryland Vehicle Law, a military policeman might have no authority to arrest him for that infraction. Likewise, it is possible that if a servicemember fled a military policeman while at some place in Maryland which was located within that State's exclusive or concurrent jurisdiction, he could not be prosecuted successfully for his flight in a State court under § 21–904.

■ If we assume, *arguendo*, that certain conduct occurring off-post is not punishable under State law, then is it permissible for the United States Government in a Federal prosecution to rely on state law, as incorporated by the Assimilative Crimes Act, in prosecuting the identical conduct when it takes place on a military post under exclusive or concurrent Federal jurisdiction? This issue apparently has not been addressed by other courts, so we lack the aid of precedent. Our own answer to this novel issue is that such prosecution may take place.

Because some of the penal provisions of the Maryland Vehicle Law could be enforced under the Assimilative Crimes Act, it can be reasoned that, on an Army post

over which the Federal Government has exclusive or concurrent jurisdiction, a military policeman *is* authorized to enforce the Maryland Vehicle Law because of its incorporation in Federal law under the Assimilative Crimes Act. On this premise, the military policeman carrying out his duties on-post can be brought within the definition of "police officer" for purposes of § 21–904.

Furthermore, to include a military policeman within the term "police officer" conforms to the underlying purpose of the Assimilative Crimes Act. That act sought to close gaps in Federal penal laws and to assure that the requirements of conduct on a Federal enclave would conform with the requirements applicable within the state in which the enclave was located. If "police officer" is construed in a narrow way, then the legislative purpose is partly negated. On a military installation, a military policeman is the "functional equivalent" of a civilian police officer elsewhere. If a servicemember may flee a military policeman with impunity while on-post, but is punished for flight from a state trooper or other civilian police officer in the surrounding area off-post, a divergence would exist between the standards of conduct applicable on-post and off-post. Moreover, the military policeman would not possess a law-enforcement tool which—in the judgment of the legislature of the State where the post is located —is important for assuring highway safety.

We conclude, therefore, that here the generic term in § 21–904, when incorporated in Federal law pursuant to the Assimilative Crimes Act, should not be given a narrow interpretation. Thus, "police officer" should be construed to include those military persons who regulate traffic on a military installation.

Appellant cannot properly complain that he is being punished without proper notice in violation of due process. *Cf. Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 288 (1957). In light of the Assimilative Crimes Act and the language of

§ 21–904 of the Maryland Code, Kline was adequately apprised that at Fort Meade flight from a military policeman might be punishable—just as flight from a civilian police officer would be punishable if it occurred off-post. Accordingly, we conclude that appellant's conviction under the Assimilative Crimes Act was proper.

### III

The decision of the United States Army Court of Military Review is affirmed.

Judge COX concurs.