**UNITED STATES**

v.

**Staff Sergeant John M. VINES III,
United States Air Force.**

ACM 34437.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 29 June 2000.

Decided 3 May 2002.

Appellate Counsel for Appellant: Colonel Beverly B. Knott, Lieutenant Colonel Timothy W. Murphy, Captain Patience E. Schermer, and Kenneth R. Norgaard.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Lance B. Sigmon, Major Martin J. Hindel.

Before YOUNG, BRESLIN, and HEAD, Appellate Military Judges.

## OPINION OF THE COURT

BRESLIN, Senior Judge:

The appellant was convicted, in accordance with his pleas, of furnishing alcoholic beverages to a minor female, and committing an indecent act upon a female while she was intoxicated, in violation of Article 134, UCMJ, 10 U.S.C. § 934. The appellant was also convicted, contrary to his pleas, of raping the same female, in violation of Article 120, UCMJ, 10 U.S.C. § 920. The approved sentence was a dishonorable discharge, 3 years' confinement, and reduction to E–1. The appellant now raises several assignments of error. Finding no error that materially prejudices the appellant's substantial rights, we affirm.

### Background

The appellant and his family lived on Gunter Annex, Maxwell Air Force Base, in Montgomery, Alabama. The victim was a 17–year–old girl who often babysat for the appellant's children. The victim's family knew the appellant's family well. In late March 1999, the victim's family had to go out of town for a family emergency. They left the victim with the appellant's family for about one week, so that she could continue her part-time job.

The following Saturday, 3 April 1999, the appellant, his wife, the victim, and her boyfriend went fishing at a nearby lake. On the way home the appellant and his wife bought some alcoholic beverages. When they got home, they began drinking together, including the victim, who had not attained the legal age to consume alcohol in Alabama. The victim drank about 8 to 10 shots of vodka within 45 minutes, became very intoxicated, and lay down on the floor. Shortly thereafter, she reported that she was going to be sick. The appellant's wife helped her to the bathroom because she could not walk; the victim vomited before reaching the bathroom. The appellant and his wife helped her clean up, and put her into one of the children's beds. Later, the victim vomited in the child's bed. The appellant helped get her cleaned up, and carried her back into bed again.

The victim was in and out of consciousness, and had a difficult time remembering the sequence of events. However, when she was awake she recalled what happened. She remembered at one point she was lying in the hallway outside the bathroom, that the appellant's voice was nearby, and that someone was moving her bikini top and bottom to the

side, and back again. She recalled waking up in the hallway later with the sound like someone was masturbating by her, that something wet went across her face, and that someone wiped her face with a piece of clothing. She awakened later lying in the bed, and recalls seeing the appellant masturbating, sitting on the bed by her legs. She recalled the appellant got a flashlight and used it to view her vagina. He also put his fingers in her vagina. She remembered the appellant leaned forward onto her chest, and put his penis into her vagina for a few seconds, twice.

The next day, Easter Sunday, the victim felt sick and sore. Her boyfriend recalled that the victim seemed depressed and moped around the next morning. The victim testified that the appellant insisted that she take a shower. She said she did, but only wetted her hair, to avoid washing away evidence. They went to the appellant's ex-wife's house for the children to celebrate Easter—the victim said she was feeling bad and stayed apart from the others. Defense witnesses testified that she seemed bright and cheerful, without any indication something was wrong.

Later that Sunday, the victim's parents came home. The victim's mother recalled the victim was highly distraught, and reported what had happened at once. The mother collected her clothes, called security forces, and took the victim to the hospital.

The hospital did the rape protocol. They found a fresh, 2 centimeter tear in the victim's vaginal area. An expert indicated it was consistent with blunt force being applied to the area, such as a penis or a finger, and was consistent with injuries found after attempted forcible intercourse. They also found a faint bruise on her chest and a more pronounced bruise on her hip. Forensic analysis disclosed semen on the victim's bikini bottom, but not on swabs from the victim's vaginal area or elsewhere. The DNA in the semen stain contained a mixture of two components that matched the appellant and the victim. The victim's boyfriend was positively excluded as a possible source.

Agents from the Air Force Office of Special Investigations (AFOSI) interviewed the appellant. The appellant wrote out a confession in longhand. He said while he carried the victim back to the bedroom she began rubbing his back, which made him sexually aroused. He said she lay on her left side with her legs drawn up, and he positioned himself on the bed near the victim's buttocks, and masturbated to ejaculation. The OSI agent testified that the appellant admitted verbally that when he was masturbating, he was very close to the victim's vagina, and that brief penetration was "possible, or probable." On cross-examination, the agent admitted that he might have first raised the idea of what was "possible."

The appellant pled guilty to giving the underage victim alcohol, and committing an indecent act by masturbating on her. But he denied raping her, and pled not guilty to that offense before the military judge sitting as a general court-martial.

The defense strenuously litigated the contested charge. They requested a pediatrician, a DNA expert, a Ph.D psychiatrist/psychologist, and a urologist as consultants—all were approved. They also requested a defense investigator to try to find witnesses to attack the victim's credibility, however the military judge denied that request as a fishing expedition.

The defense theory was that the victim made up the allegation of rape to gain sympathy, because she was in trouble with her mother over the boys she dated, the clothes she wore, and being fired from her job. Trial defense counsel attacked the credibility of the victim, alleging numerous conflicts in her testimony and prior inconsistent statements. Two defense witnesses opined that the victim was not truthful and had a reputation for being untruthful, although they admitted they had personal reasons not to like the victim.

The military judge found the appellant guilty of all charges and specifications. He sentenced him to a dishonorable discharge, 4 years' confinement and reduction to E-1. Trial defense counsel submitted a lengthy clemency package. Thereafter, the convening authority approved the sentence, but reduced the confinement period to 3 years.

The appellant now asserts trial defense counsel provided ineffective assistance of counsel, the evidence is legally and factually insufficient to prove the rape offense, and the appellant's sentence is inappropriately severe. We consider each of these in turn.

### Ineffective Assistance of Counsel

The appellant claims trial defense counsel provided ineffective assistance of counsel in four ways. Specifically, he alleges trial defense counsel: 1) Failed to call necessary witnesses to testify about the victim's conduct the following day; 2) Failed to ask that the military judge reconsider his ruling excluding evidence that the victim and her boyfriend engaged in a wrestling match a few days earlier, to show a possible source of the bruising on the victim's chest and hip; 3) Failed to call the defense expert to testify that the victim suffered from a personality disorder and had Attention Deficit/Hyperactivity Disorder (ADHD), making her less credible; and 4) Failed to ask the military judge to reconsider his ruling disallowing evidence that the victim made an allegation of rape against her boyfriend. We carefully considered each allegation, and find them insufficient to overcome the presumption that counsel provided effective assistance.

We review claims of ineffective representation de novo. *United States v. Burt*, 56 M.J. 261, 264 (2002); *United States v. Lee*, 52 M.J. 51, 52 (1999). The Supreme Court set out the standard of review for claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. Our superior court adopted this standard of review for claims of ineffective assistance of counsel in courts-martial. *United States v. Scott*, 24 M.J. 186, 187 (C.M.A.1987).

In *United States v. Polk*, 32 M.J. 150 (C.M.A.1991), the (then) Court of Military Appeals adopted a three-pronged test to determine if the presumption of competence has been overcome:

(1) Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?

(2) If the allegations are true, did defense counsel's level of advocacy fall "measurably below the performance ... [ordinarily expected] of fallible lawyers"? and

(3) If the defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result.

*Polk*, 32 M.J. at 153 (internal citations omitted). *See United States v. Sales*, 56 M.J. 255, 258 (2002); *United States v. Grigoruk*, 52 M.J. 312, 315 (2000).

### A. Failure to Call Witnesses

The appellant claims trial defense counsel failed to call critical witnesses to testify on behalf of the defense. Specifically, he complains that trial counsel failed to call Katherine Vines Driggers and Raymond A. Driggers. Letters from the Driggers submitted for clemency indicate they would testify, in pertinent part, that on Easter Sunday, the day after the offenses, the victim was acting in a manner inconsistent with having been the subject of a sexual assault the previous night.

In a responsive affidavit, trial defense counsel indicated that he did not call these witnesses for good reason. First, he considered Mrs. Driggers an unreliable witness. She was the appellant's former wife; she may have been angry with the appellant, and her "tumultuous past" with the appellant presented the opportunity for her to damage the defense case. Also, because of her past dependency on alcohol and drugs—indeed, she appeared to be under the influence of drugs during one interview—trial defense counsel thought her testimony would be unpredictable. Secondly, trial defense counsel recalled that Mr. Driggers' pretrial statements were

not as strong as the statements written later. Instead, trial defense counsel elected to present the evidence through the testimony of Mrs. Tara White, who was a much stronger witness, and the stipulation of expected testimony of Mr. George Gregory.

Reviewing the record, we note that the defense counsel called as a witness Mrs. Tara White, a part-time minister with experience counseling sexual assault victims. Mrs. White testified that on Easter Sunday she spoke with the victim for 30 to 45 minutes, and the victim was "upbeat" and "cheerful," not at all what she would expect of a recent victim. The stipulated testimony of Mr. George Gregory was to the same effect.

Under all the circumstances, we find trial defense counsel made an informed and careful decision about the best witnesses to advance this evidence. Certainly the testimony of Mrs. White and Mr. Gregory presented the evidence in a straightforward, safe, and reliable way. We also note that calling Mrs. Driggers as a witness at trial would have blunted the thrust of the appellant's case during the inevitable sentencing hearing. The appellant contended that he should not get lengthy confinement because he was the sole responsible provider for his two children, because their natural mother—Mrs. Driggers—had substance abuse problems and was unreliable. It would be inconsistent to present the same Mrs. Driggers as a reliable, trustworthy witness. Instead, trial defense counsel used the Driggers' statements during the less-contentious clemency process. Finally, we must note that this line of evidence was of little value. The defense witnesses' testimony suggested that the victim did not "act like the victim of a sexual assault" the day after the offense. Of course, the appellant pled guilty to committing a sexual assault on the child, and her testimony makes it clear that the victim perceived it as it occurred. In short, she was the victim of a sexual assault the night before. Thus, the defense witnesses' opinion that she was not acting like one was of little moment.

### B. Failure to Request Reconsideration— Source of Bruising

■ The appellant contends trial defense counsel was ineffective because he failed to ask that the military judge reconsider his ruling excluding evidence that the victim and a male friend engaged in a wrestling match a few days earlier, to show a possible source of the bruising on the victim's chest and hip. We do not agree.

At a preliminary session, the appellant sought a ruling from the military judge allowing the defense to introduce evidence that the victim saw other young men socially the week preceding the offenses, to show a possible alternate source of the injury, specifically the 2 centimeter tear found in the victim's vaginal area. The defense contended this evidence was admissible as substantive evidence under Military Rule of Evidence (Mil.R.Evid.) 608(c) to show bias. On the motion, the defense offered only the medical record of the rape protocol, and the victim's summarized testimony from the Article 32 investigation, indicating she had seen other young men socially the week prior to the offenses. The prosecution called one of the young men, who testified about his date with the victim. He indicated that some money fell out of his pocket, that the victim grabbed it, and that they wrestled playfully as he tried to retrieve it. He denied any injury to the victim. Based upon this testimony, the military judge found "no ... evidence presented to the court, other than sheer speculation, that someone other than the Accused was the source of the injury." The military judge denied the motion, and explained that his ruling was limited to the use of the testimony as substantive evidence of bias under Mil. R.Evid. 608(c). He offered the defense counsel the opportunity to attempt to use the evidence for impeachment purposes later in the trial.

The victim testified at trial. She indicated she became so intoxicated on the evening in question that she was unable to walk, and that the appellant's wife dragged her to the bathroom when she became sick. She also related that she felt pressure on her chest when the appellant leaned over her and penetrated her vagina with his penis, and that she had a bruise on her chest the next day. Trial defense counsel cross-examined her at length, including the fact that she fell down while intoxicated. He did not otherwise ex-

plore alternate sources of injury. Trial defense counsel later argued that the slight bruises on the victim could easily have come from her stumbling around while she was intoxicated.

The appellant's suggestion that trial defense counsel was deficient in failing to request reconsideration of the defense motion is not well taken. First, the motion was to introduce the evidence under Mil.R.Evid. 608(c) as proof of bias. The appellant does not now contend that the evidence was admissible to show bias, therefore there was no reason to request reconsideration of the earlier ruling. Secondly, the proffered evidence that the victim had seen several young men in social settings the week before the offenses did not demonstrate anything that could have caused the bruises in question. The military judge did not err in excluding the evidence the first time, and there was no basis to renew a similar request. Finally, trial defense counsel did extract an alternate explanation through his cross-examination—specifically, that the appellant could have bruised herself by falling while intoxicated. For these reasons, we find trial defense counsel was not deficient in this regard.

### C. Failure to Call Defense Expert Re: Victim's Mental Health

■ The appellant claims trial defense counsel was ineffective in failing to call the defense expert, Dr. Younggren, to testify that the victim suffered from a personality disorder and had Attention Deficit/Hyperactivity Disorder (ADHD), making her less credible. We find no merit to this claim.

In his responsive affidavit, trial defense counsel explained that Dr. Younggren thought the victim exhibited symptoms that caused him to suspect she was a liar. However, the doctor could not ethically testify that she had a medical condition, personality disorder, or other diagnosis that made her unreliable or untruthful. Therefore, the trial defense counsel could not call him as a witness for the defense. Nonetheless, the defense counsel summarized Dr. Younggren's beliefs in the clemency matters submitted to the convening authority. Based upon the matters in the clemency materials, the appellant now assumes there was an adequate basis for the

evidence, it was admissible at trial, and trial defense counsel erred in failing to present it.

In light of trial defense counsel's explanation, we are not persuaded that Dr. Younggren could have provided the testimony described by the appellant. Therefore, we find no basis to conclude trial defense counsel was deficient in failing to present such evidence at trial. That said, we are concerned about the clemency statements indicating that Dr. Younggren would have provided such testimony but for an error by the military judge. However, we find no prejudice to the appellant under the circumstances.

### D. Failure to Request Reconsideration—Prior Allegation of Rape.

■ The appellant asserts trial defense counsel was deficient in failing to ask that the military judge reconsider an earlier ruling, and admit evidence that the victim previously alleged that a boyfriend raped her. We find no improper performance and no possible prejudice.

The allegation of error misconstrues what happened at trial. Trial defense counsel moved to admit evidence that the victim previously said a former boyfriend raped her under Mil.R.Evid. 608(c), as evidence of bias. In support of the motion, the defense offered the verbatim testimony of the victim at the Article 32 investigation (indicating she told her mother she had consensual relations with the subject, and afterwards he was rude, insulting, and physically abusive to her), and AFOSI agent's notes of an interview with the victim's mother (indicating the victim's mother described the incident as a rape). The military judge refused to allow the defense to introduce the evidence to show bias, but specifically left open the possibility of using the evidence for impeachment purposes.

Trial defense counsel cross-examined the victim about numerous prior allegations of rape made to co-workers at her part-time job, and the allegation concerning the prior boyfriend. The victim denied making the allegations. Subsequently, over government objection, the defense introduced the testimony of co-workers regarding prior rape allegations under Mil.R.Evid. 613 as extrinsic evidence of prior inconsistent statements. Trial

defense counsel did not call the boyfriend in question, or the victim's mother, as a witness on this issue. In a responsive affidavit, trial defense counsel explained that they could not locate the boyfriend, and the victim's mother made contradictory statements. During closing argument, trial defense counsel argued that the victim's allegations were not credible, because she had lied about being raped so many times.

Turning to the allegation of ineffective assistance of counsel, we find it to be without merit. There was no reason to request reconsideration of the military judge's earlier ruling, because it related to whether this evidence was independently admissible as evidence of bias. The only question is why trial defense counsel did not call witnesses to demonstrate that the victim made a prior inconsistent statement about being raped by a former boyfriend. Trial defense counsel provided a reasonable explanation: they could not locate the young man in question and the victim's mother made inconsistent statements, making her an unsuitable witness. Therefore, we find trial defense counsel's conduct was appropriate under the circumstances.

In any event, we find no possible prejudice arising from a lack of evidence of this alleged prior report. Entering deliberations on this case, the military judge had before him allegations of multiple reports of rape from the victim's co-workers, and the victim's denial that she made such reports. One more would have made little difference.

### Legal and Factual Sufficiency of the Evidence

■ The appellant argues that the evidence is not legally or factually sufficient to support his conviction for rape. We do not concur.

Under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we will approve only those findings of guilt we determine to be correct in both law and fact. The test for legal sufficiency is whether, when the evidence is viewed in the light most favorable to the government, any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560

(1979); *United States v. Reed*, 54 M.J. 37, 41 (2000). The test for factual sufficiency is whether, after weighing the evidence and making allowances for not having observed the witnesses, we ourselves are convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987).

The victim testified that she awoke and saw the appellant engage in digital penetration and sexual intercourse with her two times, briefly, while masturbating. She was extremely intoxicated; nonetheless her statements match the appellant's confession very closely. The appellant admitted being sexually aroused by the victim, going into her room, kneeling on the bed close to her buttocks as she lay on her left side, masturbating and digitally penetrating the victim's vagina. He also admitted to the AFOSI agent that he was very close to her vagina while masturbating, so that penetration was possible.

The appellant's contention that the victim's conduct the next day was inconsistent with a sexual assault is unpersuasive. As noted above, the appellant admitted he committed an indecent act upon the victim that night. The fact that some defense witnesses did not think she acted like a victim the following day is not determinative.

The appellant's argument that the victim was not credible is similarly unpersuasive. The evidence offered to demonstrate the victim's lack of credibility was conflicting. The trial judge heard the testimony and observed the witnesses on the stand. While we have the independent power and responsibility to weigh the evidence and judge the credibility of witnesses, we must do so "recognizing that the trial court saw and heard the witnesses." Art. 66(c), UCMJ. Considering all the evidence in this case, we are convinced beyond a reasonable doubt of the appellant's guilt.

### Sentence Appropriateness

■ The appellant alleges the approved sentence is inappropriately severe. He cites the appellant's good military character and his two dependent children as justification for a lesser sentence.

This Court is given the power and responsibility of determining whether a sentence is correct in law and fact. Article 66(c), UCMJ, 10 U.S.C. § 866(c). It is also given the "highly discretionary power to determine whether a sentence 'should be approved.'" *United States v. Lacy,* 50 M.J. 286, 287 (1999) (quoting Article 66(c), UCMJ). Generally, sentence appropriateness should be judged by "individualized consideration" of the particular accused "on the basis of the nature and seriousness of the offense and the character of the offender." *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A.1982) (quoting *United States v. Mamaluy,* 27 C.M.R. 176, 180–81, 1959 WL 3587 (C.M.A. 1959)).

The maximum possible punishment for the offenses of which he was convicted included a dishonorable discharge, confinement for life, total forfeitures, a fine, and reduction to E–1. There was a pretrial agreement in exchange for the appellant's partial plea. If convicted only of the offenses to which he pled guilty, the convening authority would approve no more than 3 years' confinement. If also convicted of rape or a lesser—included offense, the convening authority would approve no more than 5 years' confinement.

We have considered carefully all the facts and circumstances of this case. The offenses are deplorable, and are aggravated by the appellant's abuse of a position of trust. The convening authority granted clemency to the appellant by reducing the confinement from 4 years to 3 years. We find the approved sentence appropriate for these offenses and this offender.

### Providence of the Plea—Providing Alcohol to a Minor

Although not raised as an issue before this Court, we are concerned about the providence of the appellant's plea to supplying alcohol to a minor, contrary to Alabama state law. In order to appreciate the difficulties in this case, it is helpful to discuss briefly how violations of state laws may be charged under Article 134, UCMJ.

Article 134, UCMJ, makes punishable three categories of offenses not specifically covered elsewhere in the UCMJ, known as "clauses 1, 2, and 3" of the article. *Manual for Courts–Martial, United States, (MCM),* Part IV, ¶ 60(c)(1) (2000 ed.). Clause 1, Article 134, UCMJ, prohibits "all disorders and neglects to the prejudice of good order and discipline in the armed forces." Clause 2 offenses involve "all conduct of a nature to being discredit upon the armed forces." Clause 3 covers "crimes and offenses not capital," that is, noncapital offenses that violate federal law. There are significant differences in pleading and proving offenses brought under clauses 1 or 2, and offenses charged under clause 3.

Pleading offenses under clauses 1 and 2 of Article 134, UCMJ, is fairly straightforward. A specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication. Rule for Courts–Martial (R.C.M.) 307(c)(3); *United States v. Sell,* 11 C.M.R. 202, 206, 1953 WL 2005 (C.M.A.1953). The elements of clauses 1 and 2 of Article 134, UCMJ, may be summarized as:

(1) That the accused did or failed to do certain acts; and

(2) That, under the circumstances, the accused's conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

*MCM,* Part IV, ¶ 60b. It is not necessary to expressly allege that the conduct was "prejudicial to good order and discipline," or "of a nature to bring discredit upon the armed forces" to charge an offense under Article 134, UCMJ, *MCM,* Part IV, ¶ 60c(6)(1); *United States v. Marker,* 3 C.M.R. 127, 134, 1952 WL 1848 (C.M.A.1952). However, they are elements of the offense upon which the court members must be instructed. *United States v. Williams,* 24 C.M.R. 135, 137, 1957 WL 4724 (C.M.A.1957). The Manual for Courts–Martial provides forms for many common offenses under Article 134, clauses 1 and 2. *MCM,* Part IV, ¶¶ 61–113.

Under proper circumstances, a violation of local law or foreign law may constitute an offense under clauses 1 or 2 of Article 134, UCMJ. *MCM,* Part IV, ¶ 60c(2)(a) and (3). However, not every violation of a state statute is "service discrediting" conduct suffi-

cient to constitute a violation of Article 134, UCMJ. *United States v. Rowe*, 32 C.M.R. 302, 308 (C.M.A.1962). If the underlying conduct states an offense cognizable under Article 134, UCMJ, it may be unnecessary— or even unhelpful—to include the reference to state law in the specification. *United States v. Sadler*, 29 M.J. 370, 374 (C.M.A. 1990); *United States v. Mayo*, 12 M.J. 286, 289–93 (C.M.A.1982); *United States v. Leach*, 22 C.M.R. 178, 191, 1956 WL 4754 (C.M.A. 1956); *United States v. Long*, 6 C.M.R. 60, 66, 1952 WL 2276 (C.M.A.1952).

Pleading offenses under clause 3 is somewhat more complex. Typically, a specification drawn under clause 3 will allege facts essential to prove the charged offense, and a citation to the federal statute in question. If the specification charges the wrong federal statute, that flaw may not be fatal. *United States v. Hutcheson*, 312 U.S. 219, 229, 61 S.Ct. 463, 85 L.Ed. 788 (1941); *Kniess v. United States*, 413 F.2d 752 (9th Cir.1969) (although the bogus money orders did not fall under 18 U.S.C. § 472 as charged, the Court found they were chargeable under § 500).

> It is wholly immaterial what statute was in the mind of the District Attorney when he drew the indictment, if the charges made are embraced by some statute in force.... We must look to the indictment itself, and if it properly charges an offence under the laws of the United States, that is sufficient to sustain it, although the representative of the United States may have supposed that the offence charged was covered by a different statute.

*Williams v. United States*, 168 U.S. 382, 389, 18 S.Ct. 92, 42 L.Ed. 509 (1897). On the other hand, failure to allege facts essential to the charged offense may make the specification legally insufficient to charge an offense. *Mayo*, 12 M.J. at 288.

It is possible to charge a violation of state law under clause 3 through a specific federal statute: 18 U.S.C. § 13, known as the Assimilative Crimes Act (ACA). *United States v. Robbins*, 52 M.J. 159, 164 (1999) (Sullivan, J., concurring). Through the ACA, Congress adopted state criminal laws for areas of exclusive or concurrent federal jurisdiction.

The ACA is intended to fill gaps that would otherwise exist in federal criminal law. *United States v. Irvin*, 21 M.J. 184, 188 (C.M.A. 1986). The ACA does not, however, operate to redefine crimes already prescribed by Congress. Thus, a state statute may be assimilated if the act or omission is not punishable by any act of Congress; if it is punishable by some other act of Congress, it may not be assimilated if the applicable federal law indicates an intent to punish the conduct to the exclusion of the state statute at issue. *Lewis v. United States*, 523 U.S. 155, 164–65, 118 S.Ct. 1135, 140 L.Ed.2d 271 (1998). This is known as the pre-emption doctrine. *United States v. Robbins*, 48 M.J. 745, 748–49 (A.F.Ct.Crim.App.1998).

A specification alleging an offense made punishable through the ACA must allege that the offense occurred within the exclusive or concurrent jurisdiction of the United States. It should also allege a violation of 18 U.S.C. § 13 (*MCM*, Part IV, ¶60 (c)(6)(b)), and the state statute in question (*Rowe*, 32 C.M.R. at 310). If an accused pleads guilty to an offense charged under the ACA, the military judge should explain each element of the assimilated offense (the state crime) and the additional element requiring exclusive or concurrent federal jurisdiction over the situs of the crime. *United States v. Jones*, 34 M.J. 270, 272 (C.M.A.1992); *United States v. Kline*, 21 M.J. 366, 367 (C.M.A.1986). The maximum punishment for an assimilated crime is determined by the maximum punishment for a closely related offense under the UCMJ. R.C.M. 1001(c)(1)(B).

We turn to the specification in question. Specification 2 of Charge II alleged a violation of Article 134, UCMJ, for violating specific provisions of Alabama state law, which established the state's legal drinking age and prohibited furnishing alcohol to persons under that age. As written, the specification alleged a violation of clauses 1 or 2 of Article 134, UCMJ. Shortly before trial, the government amended the specification, without objection, to allege the offense occurred in an area of exclusive federal jurisdiction. The specification was not amended to include any reference to the Assimilative Crimes Act, 18 U.S.C. § 13, although the parties discussed

the offense as being "assimilated." The parties determined that the most closely related offense was dereliction of duty, in violation of Article 92, UCMJ, 10 U.S.C. § 892.

The appellant entered a guilty plea to this specification. The military judge read to him the Alabama statutes in question, and explained the requirement of exclusive or concurrent jurisdiction. The military judge, with the concurrence of the parties, explained the elements of the crime using the elements of a dereliction of duty offense under Article 92, UCMJ, rather than Article 134, UCMJ. The appellant admitted that the elements described the crime he committed. The military judge did not inquire whether the appellant believed the offense was prejudicial to good order and discipline, or of a nature to bring discredit upon the armed forces. The military judge accepted the guilty plea, with the concurrence of all parties.

"The military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea." R.C.M. 910(e). If, after a plea of guilty, the accused "sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect ... a plea of not guilty shall be entered...." Article 45(a), UCMJ, 10 U.S.C. § 845(a). If the factual circumstances revealed by the accused objectively support that plea, the factual predicate is established. *United States v. Faircloth*, 45 M.J. 172, 174 (1996) (citing *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A.1980)). In determining whether a guilty plea is provident, the standard of review is whether there is a " 'substantial basis' in law and fact for questioning the guilty plea." *United States v. Milton*, 46 M.J. 317, 318 (1997) (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991)).

 Normally, a specification alleging an offense under the ACA should cite to 18 U.S.C. § 13. While that did not occur in this case, it is clear the appellant was not surprised or unable to prepare his defense. Under the circumstances, the lack of a reference to the ACA was harmless error. *Hutcheson*, 312 U.S. at 229, 61 S.Ct. 463. We are also convinced that, in the specific circumstances of this case, reading the state statutes in question was tantamount to advising the appellant of the elements of the crime. Of course, the "most analogous offense" is used to determine the maximum punishment, not the elements of the crime. Nonetheless, we conclude that the military judge's inquiry and the appellant's voluntary responses were sufficient to establish the appellant's guilt to an offense under Article 134, clause 3. *Jones*, 34 M.J. at 272.

### Conclusion

In accordance with the opinion above, the approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987). Accordingly, the approved findings and sentence are

AFFIRMED.