# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-50439

UNITED STATES OF AMERICA,

United States Court of Appeals
Fifth Circuit

**FILED**

August 24, 2018

Lyle W. Cayce
Clerk

Plaintiff – Appellee,

v.

MADRID RAHEEM HOPKINS, also known as Macky, also known as Madrid R. Hopkins, also known as Makky B., also known as Madrid Rohean Hopkins, also known as Madrid Roheem Hopkins, also known as Macky Hopkins, also known as Macky B.,

Defendant – Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before DAVIS, JONES, and ENGELHARDT, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Madrid Raheem Hopkins appeals his conviction for evading arrest or detention while using a motor vehicle in violation of the Assimilative Crimes Act, 18 U.S.C. § 13, assimilating Texas Penal Code § 38.04. Concluding that the factual basis for Hopkins's guilty plea is legally sufficient, we AFFIRM.

## I.     BACKGROUND.

In June 2016, Hopkins drove onto Fort Sam Houston, a United States military installation[1] located in San Antonio, Texas, without stopping at the

---

[1] Fort Sam Houston, along with Lackland and Randolph Air Force Bases, comprise Joint Base San Antonio, which is administered by the United States Air Force.

No. 17-50439

entry gate for inspection. When security forces officers drove up behind him in their patrol units with lights and sirens in an attempt to perform a traffic stop, Hopkins continued driving. The officers ultimately forced Hopkins to stop by boxing in his vehicle with multiple patrol units. During a search of the vehicle, the officers discovered a loaded pistol, an additional loaded magazine, and loose ammunition.

The Government subsequently filed a two-count indictment against Hopkins. In count one, Hopkins, who had prior convictions for robbery, was charged with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). In count two, Hopkins was charged with using a vehicle on "Joint Base San Antonio – Fort Sam Houston, Texas," within the "territorial jurisdiction of the United States," to "intentionally flee from a Security Forces Officer, a person the defendant knew was a peace officer and a federal special investigator who was attempting lawfully to arrest or detain [him], in violation of [18 U.S.C. § 13], assimilating Texas Penal Code Section 38.04(a)/(b)(2)(A)." Hopkins pleaded guilty to both counts of the indictment.

As to count two, however, Hopkins argued that, as a matter of law, the factual basis for his plea did not constitute a violation of the Texas evading arrest or detention statute. Specifically, Hopkins argued that the Texas statute requires fleeing from a "peace officer" or "federal special investigator" as defined by the Texas Penal Code. Because security force officers on a military installation are not included in the definitions of "peace officer" or "federal special investigator," Hopkins asserted that the factual basis for his guilty plea could not support a conviction under the Texas evading arrest or detention statute, as assimilated by the Assimilative Crimes Act ("ACA"), 18 U.S.C. § 13. The district court disagreed, accepted Hopkins's guilty plea, and sentenced him to concurrent terms of fifty-one months in prison and three

2

years of supervised release. The district court also imposed a $100 special assessment as to each count. Hopkins timely appealed.

## II. LAW and ANALYSIS.

Hopkins argues that his conviction and sentence under the ACA, assimilating the Texas evading arrest or detention statute, should be vacated because the factual basis for his guilty plea is legally insufficient to support such conviction. He asserts that the military police from whom he fled are not "peace officers" or "federal special investigators," a required element for an offense under the Texas evading arrest or detention statute, because the applicable Texas statutes do not include military police in the lists of "peace officers" and "federal special investigators." Hopkins contends that, consequently, his conviction for violating the Texas evading arrest or detention statute, as assimilated into federal law under the ACA, cannot stand.

The issue whether the undisputed factual basis of Hopkins's guilty plea is sufficient as a matter of law to sustain his conviction "presents a straightforward issue of law," which we review de novo.[2] The ACA "provide[s] a set of criminal laws for federal enclaves by the use of the penal law of the local state to fill the gaps in federal criminal law."[3] It makes punishable any act committed within the territorial jurisdiction of the United States that, "although not made punishable by any enactment of Congress, would be punishable if committed . . . within the jurisdiction of the State . . . in which such place is situated."[4] "Any lands reserved or acquired for the use of the United States," such as military installations, are within the "territorial jurisdiction of the United States."[5]

---

[2] *United States v. Marek*, 238 F.3d 310, 315 (5th Cir. 2001).

[3] *United States v. Brown*, 608 F.2d 551, 553 (5th Cir. 1979) (internal quotation marks and citation omitted).

[4] 18 U.S.C. § 13(a).

[5] *Id.* § 7(3).

No. 17-50439

The Texas evading arrest or detention statute provides that "[a] person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him."[6] The status of the person attempting the lawful arrest or detention "as a peace officer [or federal special investigator] is an element of the offense."[7]

Section 1.07(a)(36) of the Texas Penal Code provides that the term "'[p]eace officer' means a person elected, employed, or appointed as a peace officer under Article 2.12, Code of Criminal Procedure, Section 51.212 or 51.214, Education Code, or *other law*."[8] Article 2.12 lists as "peace officers" thirty-five types of law enforcement officers, including sheriffs, police officers, rangers, and other security personnel.[9] Section 51.212(a) authorizes the governing boards of private institutions of higher education to commission "peace officers" to enforce state and local laws on campuses.[10] Section 51.214 allows the governing boards of private, non-profit medical corporations to provide security for higher education institutions or medical complexes.[11] Military police are not included in any of these lists or provisions.

The Texas Penal Code further provides that the term "'[f]ederal special investigator' means a person described by Article 2.122, Code of Criminal Procedure."[12] Article 2.122(a) provides a list of fourteen kinds of federal criminal investigators, agents, marshals, and police officers who are not deemed "peace officers," but who "have the powers of arrest, search, and seizure" under Texas law as to certain offenses.[13] Article 2.122(b)-(g) provides

---

[6] TEX. PENAL CODE § 38.04(a).

[7] *Fabela v. State*, 431 S.W.3d 190, 196 (Tex. App. – Amarillo 2014) (citation omitted).

[8] TEX. PENAL CODE § 1.07(a)(36) (emphasis added).

[9] TEX. CODE CRIM. PROC. ANN. art. 2.12(1)-(35).

[10] TEX. EDUC. CODE § 51.212.

[11] *Id.* § 51.214.

[12] TEX. PENAL CODE § 1.07(a)(46-b).

[13] TEX. CODE CRIM. PROC. ANN. art. 2.122(a).

that other special investigators, who work for various federal agencies, are also not "peace officers" under Texas law, but have the powers of arrest, search, and seizure, and, in some cases, detention.[14]  Military police are also not included in any of these lists or provisions.

The Government acknowledges that military police officers, like the security forces officers at Fort Sam Houston, are not included in the lists of "peace officers" or "federal special investigators" under the applicable Texas statutes.  The Government argues, however, that the "crux" of an offense under the Texas evading arrest or detention statute is the act of fleeing from a law enforcement official who has the power to arrest or detain the offender and who is attempting lawfully to do so.  It asserts that the military police at Fort Sam Houston are the functional equivalent of Texas "peace officers" and "federal special investigators" with respect to their power to detain a civilian offender on a military installation.  Based on a broad interpretation of the assimilated Texas statute, the Government contends that the factual basis of Hopkins's guilty plea is sufficient to support his conviction under the ACA.

Although the issue presented is a matter of first impression for our Court, we find persuasive the reasoning of the United States Court of Military Appeals in the analogous case of *United States v. Kline*, 21 M.J. 366 (1986), cited by the Government.  In that case, a military police officer observed the defendant driving the wrong way on a one-way street in Fort Meade, a military installation in Maryland.[15]  When the military police officer turned on his emergency lights and siren in an attempt to stop the defendant, the defendant did not stop, speeded up, and ultimately hit a curb and road marker.[16]  He later pleaded guilty to eluding a police officer in violation of Title 21, Section 904 of

---

[14] *Id.* art. 2.122(b)-(g).

[15] *Kline*, 21 M.J. at 366.

[16] *Id.*

the Maryland Code, as assimilated by the ACA.[17]   Under the applicable Maryland statute, "police officer" meant "an officer authorized to direct or regulate traffic or to make arrests for violations of any of the provisions of the Maryland Vehicle Law or of local or other traffic laws or regulations."[18]   The issue presented was "whether the military policeman who pursued [the defendant] qualified as a 'police officer' for purposes of prosecution under the Maryland Vehicle Law, as incorporated by the [ACA]."[19]

The court determined that because the ACA incorporates Maryland Vehicle Law into federal law, "it [could] be reasoned that, on an Army post over which the Federal Government has exclusive or concurrent jurisdiction, a military policeman *is* authorized to enforce the Maryland Vehicle Law."[20]   The court stated further: "On this premise, the military policeman carrying out his duties on-post can be brought within the definition of 'police officer' for purposes of § 21-904 [of the Maryland Code]."[21]   The court also based its reasoning on the "underlying purpose" of the ACA "to close gaps in Federal penal laws and to assure that the requirements of conduct on a Federal enclave would conform with the requirements applicable within the state in which the enclave was located."[22]   It determined that a military policeman on a military installation is the "functional equivalent" of a civilian police officer elsewhere

---

[17] *Id.* at 367.   Because the defendant was a servicemember, the ACA was in turn incorporated by the Uniform Code of Military Justice, 10 U.S.C. § 934.   *Id.*

[18] MD. CODE ANN. TRANSP. § 11-147.

[19] *Kline*, 21 M.J. at 367.

[20] *Id.* at 368.   As we have noted, "[w]hen one commits non-federal crimes on federal property within a state's territorial jurisdiction, the United States can prosecute him for violations of state law under the ACA." *United States v. Martinez*, 274 F.3d 897, 904–05 (5th Cir. 2001).   "The ACA transforms a crime against the state into a crime against the federal government." *United States v. Kiliz*, 694 F.2d 628, 629 (9th Cir. 1982).

[21] *Kline*, 21 M.J. at 368.

[22] *Id.*

and that "police officer" under the Maryland statute "should be construed to include those military persons who regulate traffic on a military installation."[23]

We similarly determine that "peace officer" under Texas Penal Code § 1.07(36) should be construed to include security forces officers on a military installation, such as those at Fort Sam Houston who attempted lawfully to stop Hopkins. Security forces officers are the functional equivalent of civilian peace officers.[24] Moreover, construing the meaning of "peace officer" to include the military police furthers the ACA's underlying purpose of filling in the gaps in Federal penal laws to assure that the conduct required on a Federal enclave conforms with the requirements of the state in which it is located.

Based on the foregoing, we conclude that the factual basis for Hopkins's guilty plea was sufficient to sustain his conviction under the ACA, assimilating the Texas offense of evading arrest or detention. Therefore, the district court's judgment is AFFIRMED.

---

[23] *Id.*

[24] *See* Secretary of the Air Force Instruction 31-118, ¶ 6.8 (setting forth Security Forces Standards and Procedures and authorizing security forces officers "to detain civilians for offenses occurring on the installation"). Furthermore, we note that Texas Penal Code § 1.07(a)(36) provides that the term "'[p]eace officer' means a person elected, employed, or appointed as a peace officer under . . . *other law*." Therefore, the lists of "peace officers" provided in Article 2.12 of the Texas Code of Criminal Procedure and Sections 51.212 and 51.214 of the Texas Education Code are not exclusive.