UNITED STATES, Appellee,

v.

Gloria A. IRVIN, Senior Airman,
U.S. Air Force, Appellant.

No. 44221.
ACM 23269.

U.S. Court of Military Appeals.

Jan. 13, 1986.

For Appellant: *Major Alexander S. Nicholas* (argued); *Colonel George R. Stevens* (on brief).

For Appellee: *Captain Joseph S. Kistler* (argued); *Colonel Kenneth R. Rengert, Lieutenant Colonel William H. Seckinger* (USAFR), *Major George D. Cato* (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

On October 18, 1979, the Denver Department of Social Services placed a two-year-old child, Margaret Cox, for adoption in the home of appellant and her husband, who were both servicemembers and resided at Lowry Air Force Base, Colorado. As a result of Margaret's death two months later, appellant was charged with her murder,[1] assaults on her "at divers times from on or about 18 October 1979 to on or about 12 December 1979,"[2] and child abuse over this same period. The child abuse was alleged to contravene "Section 18–6–401, Colorado Revised Statutes, 1973, as amended, as assimilated by" the Assimilative Crimes Act, 18 U.S.C. § 13, which, in turn, was incorporated by the "crimes and offenses not capital" clause of Article 134 of the Uniform Code of Military Justice, 10 U.S.C. § 934.[3]

Contrary to appellant's pleas, a general court-martial convicted her of involuntary manslaughter by exceptions and substitutions[4] and otherwise found her guilty as charged. The court-martial sentenced Irvin to a dishonorable discharge, confinement at hard labor and forfeiture of $400.00 pay per month for 4 years, and reduction to the grade of E-1. Apart from reducing the forfeiture to $334.00 pay per month, the convening authority approved the findings and sentence. The Court of Military Review, 13 M.J. 749 (A.F.C.M.R. 1982), determined that the military judge had miscomputed the maximum sentence imposable for the child-abuse offense. Because of this and a related error, it reassessed the sentence and reduced the confinement to 3 years but upheld the findings and the remainder of the sentence as approved by the convening authority.

This Court granted review[5] to determine

WHETHER THE APPLICABILITY OF THE ASSIMILATIVE CRIMES ACT CAN BE ESTABLISHED WITHOUT EVIDENCE OR JUDICIAL NOTICE EITHER AT TRIAL OR ON APPEAL.

1. *See* Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918. The specification alleges that appellant

did, at Lowry Air Force Base, Colorado, on or about 12 December 1979, murder Margaret Cox, also known as Adriann J. Irvin, by means of: Hitting her in the head with an unknown instrument or by exerting force upon her in such a manner as to cause her to strike her head.

2. These assaults were alleged in this specification as a violation of Article 128, UCMJ, 10 U.S.C. § 928. The specification alleges that appellant

did, at Lowry Air Force Base, Colorado, at divers times from on or about 18 October 1979 to on or about 12 December 1979, unlawfully strike Margaret Cox, also known as Adriann J. Irvin, a child under the age of sixteen years, on the head, face, back, chest, buttocks and legs, with her hands and an unknown object, and on the leg with a comb.

3. The child abuse specification alleged that appellant

did at Lowry Air Force Base, Colorado, ... unlawfully, knowingly, feloniously, intentionally, and negligently, and without justifiable

excuse, cause and permit a child, namely Margaret Cox, also known as Adriann J. Irvin, to be placed in a situation that may endanger the child's life and health; and further, did cause and permit the child to be tortured and cruelly punished, and as a result thereof, said child suffered serious bodily injury and death; and that, such conduct was of a nature to bring discredit upon the armed forces.

4. The words substituted for the word "murder" were "while perpetrating an offense directly affecting the person of Margaret Cox ... to wit: assault and battery, unlawfully kill."

5. The Court also granted review on this evidentiary issue:

WHETHER, IN A PROSECUTION OF A PARENT FOR CHILD ABUSE, THE MILITARY RULES OF EVIDENCE PERMIT PHYSICIANS' OPINION TESTIMONY THAT THE ALLEGED VICTIM WAS PHYSICALLY ABUSED BY A CARETAKER WITHOUT JUSTIFIABLE EXCUSE, AND THAT THE VICTIM WAS AFFLICTED WITH THE BATTERED CHILD SYNDROME.

However, briefs were not requested on this issue, and oral argument did not take place thereon.

## I

■ For areas "under the exclusive or concurrent jurisdiction" of the United States, the Assimilative Crimes Act incorporates the penal laws of the State in which that area is located. *See United States v. Perry*, 12 M.J. 112 (C.M.A.1981); *United States v. Rowe*, 13 U.S.C.M.A. 302, 32 C.M.R. 302 (1962).[6] However, this Act cannot be invoked with respect to crimes committed in places which—although they may be owned by the United States—are not subject to its "exclusive or concurrent jurisdiction." *United States v. Perry, supra.* The creation of such "jurisdiction requires the consent of the State where the installation is located, and, without that consent, the possession by the United States is 'simply that of an ordinary proprietor.'" Moreover, at least since 1940, "it must be established not only that the State involved ceded jurisdiction but also that the United States accepted the cession." *United States v. Williams*, 17 M.J. 207, 212 (C.M.A.1984).

■ Appellant complains that the Government failed to establish applicability of the Assimilative Crimes Act because no evidence was offered that the United States had ever acquired "exclusive or concurrent jurisdiction" over her residence at Lowry Air Force Base—where the alleged child abuse took place. The Government does not contest the lack of evidence as to Federal jurisdiction but seeks to rectify that omission by means of judicial notice.

Appellate government counsel contend that the trial judge implicitly took judicial notice that Lowry Air Force Base was subject to the exclusive jurisdiction of the United States; indeed, that was the basis of the opinion below. 13 M.J. at 754. In this regard, reliance is placed on the language of a written motion to dismiss all charges filed by the defense counsel and of a response thereto by trial counsel. At that time, apparently both counsel believed

that exclusive Federal jurisdiction existed over the Base. However, when the motion was considered at an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session before trial, the military judge made no comment indicating that he was taking judicial notice of Lowry's jurisdictional status. Furthermore, when later he instructed the court members on findings, the judge specifically advised them of the facts of which he had taken judicial notice and the facts as to which the parties had stipulated; but he said nothing about "exclusive or concurrent [Federal] jurisdiction." Under these circumstances, we cannot agree with the Court of Military Review that judicial notice of an essential element was taken "by implication." Moreover, we disagree with the court below that defense counsel "conceded the specific applicability of the Assimilative Crimes Act at trial," 13 M.J. at 754; and, in any event, we believe that for such a concession appellant's express or implied concurrence should have been made a matter of record.

In the Court of Military Review, the Government requested that judicial notice be taken of the existence of Federal jurisdiction over Lowry Air Force Base and filed various documents in support of that request. On the premise that the military judge had already taken judicial notice, as indicated above, the court below found it unnecessary to determine whether it could properly take judicial notice of this matter. Now, the Government asks that we judicially notice the existence of Federal jurisdiction over the situs of the alleged crime.

Although the Military Rules of Evidence do not specifically authorize this Court to take judicial notice, *see* Mil.R.Evid. 201, we have no doubt that it is within our power to do so in a proper case. *See United States v. Williams, supra.* However, if we take judicial notice of a factual matter at the appellate level in a case which, as here, was tried before court members, we are depriv-

---

6. The process of incorporation is subject to some limitations. *See United States v. Picotte,* 12 U.S.C.M.A. 196, 30 C.M.R. 196 (1961); *see also Williams v. United States,* 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946); *Johnson v. Yellow Cab Transit Co.,* 321 U.S. 383, 64 S.Ct. 622, 88 L.Ed. 814 (1944).

ing the accused of an important right guaranteed by the Uniform Code and by Mil.R. Evid. 201(g). *See United States v. Williams, supra.* Therefore, in *Williams,* we declined to take judicial notice of Federal jurisdiction over a particular location where a kidnapping had occurred at Fort Hood, Texas.

Of course, *Williams* differs from this case in that, there, a *DuBay*[7] hearing conducted by a military judge had demonstrated that part of Fort Hood was not subject to Federal jurisdiction, but nothing in the present record excludes the possibility that all of Lowry Air Force Base is subject to Federal jurisdiction. However, this record does not show beyond "reasonable dispute" that Lowry Air Force Base is subject to "exclusive or concurrent [Federal] jurisdiction," *see* Mil.R.Evid. 201(b); and so this Court should not take judicial notice as to such jurisdiction.

The Government suggests that a *DuBay* hearing now be ordered, wherein a military judge could determine the jurisdictional status of appellant's residence at Lowry Air Force Base. *United States v. Mead,* 16 M.J. 270 (C.M.A.1983), provides an analogy, for there a convening authority ordered a revision proceeding at which the military judge who had presided at the trial took judicial notice of the Navy regulation on which the Government's case was predicated. However, in *Mead* the accused had not been tried by court members; and so he could not complain that the revision proceeding had deprived him of the right for court members to consider, pursuant to proper instructions, the fact judicially noticed by the judge. *See* Mil.R.Evid. 201(g).

Admittedly, in *Williams,* we initially ordered the *DuBay* hearing, even though the accused had been tried by court members. 14 M.J. 428 (C.M.A.1983). However, that hearing was ordered at a time before this Court had thoroughly considered the implications of Mil.R.Evid. 201(g) and had become fully aware of the complexity of determining the existence of Federal jurisdiction as to some place on a military installation. Indeed, the results of that hearing in *Williams* were helpful in alerting us to the problems latent in determining the extent of Federal jurisdiction over military installations.

Therefore, even though, upon a proper showing, the military judge at trial might have judicially noticed that appellant's residence was in an area subject to "exclusive or concurrent [Federal] jurisdiction," *see* Mil.R.Evid. 201(c), we do not believe that now the Government's failure to establish such jurisdiction may be rectified by a *DuBay* hearing.[8]

## II

Even if the Government proved at trial that "exclusive or concurrent [Federal] jurisdiction" existed over the place where the child abuse occurred, the findings of guilty under the Assimilative Crimes Act could not be affirmed. Our conclusion in this regard is based on the close relationship here between the child-abuse charge and the assault charge.

This relationship led defense counsel to move unsuccessfully before trial that the child-abuse charge be dismissed on grounds of preemption by Federal criminal statutes. Subsequently, appellant advanced the same contentions before the Court of Military Review and in the petition for review filed in this Court. In this connection, he properly relied on the premise that the Assimi-

---

7. *United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

8. Perhaps a procedure could be utilized under which a case is remanded to a court-martial with members for the sole purpose of making a finding as to the specific issue of which the military judge is taking judicial notice. Generally, the prosecution is not allowed a second chance to prove an element of the offense which has been overlooked at trial. *Cf. Burks v. Unit-*

*ed States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Whether that principle would apply in this situation, we need not determine. However, our decision in *United States v. Mead,* 16 M.J. 270 (C.M.A.1983), would seem to imply that even after the conclusion of the original trial, the Government may be allowed to demonstrate the existence of facts which are subject to judicial notice.

lative Crimes Act is intended to fill gaps that would otherwise exist in Federal criminal law, rather than to allow a redefining of crimes prescribed by Congress. *United States v. Wright*, 5 M.J. 106 (C.M.A.1978); *United States v. Butler*, 541 F.2d 730 (8th Cir.1976).

Thus, in *Williams v. United States*, 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946), the Supreme Court refused to allow use of the Assimilative Crimes Act to permit Federal prosecution under an Arizona statute for a sexual offense that had occurred on an Indian reservation in that State. Federal criminal statutes defining adultery and carnal knowledge applied generally to the type of conduct involved; but they differed from the Arizona Code. For example, the age of consent was sixteen years under Federal law and eighteen under the Arizona statute; and there were differences in the authorized punishments.

As the Supreme Court pointed out, the history of the Assimilative Crimes Act reveals that it was enacted

> to cover crimes on which Congress had not legislated and did not suggest that the Act was to enlarge or otherwise amend definitions of crimes already contained in the Federal Code.

As to the particular offense involved in this case, the legislative history shows an increasing purpose by Congress to cover rape and all related offenses fully with penal legislation. In the Federal Crimes Act of 1825, 4 Stat 115, rape was prohibited and made punishable only within certain areas under the admiralty and maritime jurisdiction of the United States. In the same Act, the assimilative crimes section was applied to federal enclaves. It thus provided the original federal prohibition of such conduct in those areas. If Congress had been satisfied to continue to apply local law to this and related offenses it would have been simple for it to have left the offense to the Assimilative Crimes Act. A contrary intent of Congress has been made obvious. Congress repeatedly has increased its list of specific prohibitions of related offenses

and has enlarged the areas within which those prohibitions are applicable. It has covered the field with uniform federal legislation affecting areas within the jurisdiction of Congress.

327 U.S. at 723–24, 66 S.Ct. at 784–85 (footnotes omitted).

■ As we understand *Williams v. United States, supra*, it does not alter the principle that, where two Federal penal statutes apply to the same conduct, the prosecutor may choose to proceed under the statute which authorizes the more severe punishment. *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). Indeed, in some instances he may proceed under both statutes and obtain consecutive sentences. *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). However, he is not allowed to utilize the Assimilative Crimes Act as a means to apply local law which differs from Federal criminal statutes applicable to the same conduct. If the penalties under the Federal statutes are too light, the remedy is for Congress to increase those penalties, rather than for prosecutors to attempt to invoke more severe sanctions that may be available under local law.

*Williams v. United States, supra*, applies fully to cases tried by court-martial. *See United States v. Picotte*, 12 U.S.C. M.A. 196, 30 C.M.R. 196 (1961); *United States v. Price*, 32 C.M.R. 812, 827 (A.F.B. R.1962). Therefore, a servicemember cannot be prosecuted under the Assimilative Crimes Act, as incorporated in Article 134, for conduct which clearly falls within the purview of a specific punitive article of the Uniform Code.

Although appellant claims that Article 128 of the Uniform Code, 10 U.S.C. § 928, which prohibits assaults, precludes use of the Assimilative Crimes Act to incorporate the Colorado child-abuse law, it appears that Article 128 would not punish many acts or omissions contravening this law. Section 18–6–401 of the Criminal Code of Colorado provides:

(1) A person commits child abuse if he knowingly, intentionally, or negligently, and without justifiable excuse, causes or permits a child to be:

(a) Placed in a situation that may endanger the child's life or health; or

(b) Exposed to the inclemency of the weather; or

(c) Abandoned, tortured, cruelly confined, or cruelly punished; or

(d) Deprived of necessary food, clothing, or shelter.

\* \* \* \* \* \*

(7) Child abuse is a class 2 misdemeanor, but if it results in serious bodily injury to the child, it is a class 3 felony.

Thus, depriving a child of food and water for several days or leaving him outside in a snowstorm may be child abuse under Colorado law but would not constitute an assault under military law.

■ In this case, the charge of child abuse contains allegations of misconduct by Irvin that go beyond the scope of Article 128. Consequently, we have no disagreement with the trial judge's denial of the defense motion to dismiss the charge of child abuse on grounds of preemption. However, after all the evidence was in, it became clear that the child abuse for which appellant was being prosecuted consisted of her assaults on the two-year-old child, Margaret Cox. Other than for such assaults, no child abuse was proved.

Under the Table of Maximum Punishments, the maximum confinement authorized for assault and battery on a child is 2 years; and the maximum is 5 years' confinement for an assault in which grievous bodily harm is intentionally inflicted. *See* Table of Maximum Punishments, para. 127 *c*, Manual for Courts-Martial, United States, 1969 (Revised edition). However, for the child abuse—consisting solely of assaults—the military judge concluded that the maximum punishment was 8 years' con-

finement—the maximum allowed for this offense under the assimilated Colorado statute. Thus, the conviction of child abuse was deemed to permit imposing (a) more than four times the maximum punishment authorized by the Manual for assault and battery on a child; or (b) substantially more than that authorized for an assault wherein grievous bodily harm is intentionally inflicted.

Because the child abuse consisted of assaults, this result conflicts with the principle of *Williams v. United States, supra,* that the Assimilative Crimes Act cannot be utilized to redefine existing Federal offenses or to enlarge the punishments authorized for them. Perhaps the penalties authorized by the President for assaults on children are too lenient; but, if this be true, the situation must be corrected by a Manual change, rather than by invoking State law pursuant to the Assimilative Crimes Act. Accordingly, the findings of guilty rendered under that Act cannot stand.

### III

Because we cannot sustain the conviction of child abuse as a violation of the Assimilative Crimes Act pursuant to the third clause of Article 134, the Government urges us to look elsewhere in that Article for authority to do so. In this connection, appellate government counsel call to our attention that the military judge advised the court members that they could not find appellant guilty of the child-abuse charge, unless they concluded that her conduct was service discrediting.[9]

In *United States v. Williams, supra,* where the Government failed to establish that the kidnapping took place in a location that was subject to the "special maritime and territorial jurisdiction of the United States," *see* 18 U.S.C. § 7, we nonetheless upheld the findings of guilty because the court members had been instructed that

---

9. Apparently, such an instruction often is given in prosecutions under the third clause of Article 134, *see, e.g., United States v. Williams,* 17 M.J. 207 (C.M.A.1984), even though it is superfluous and has the effect of imposing upon the Govern-

ment a requirement that would be unnecessary for conviction. However, in some instances it enables salvaging convictions that might otherwise be set aside. *See, e.g., United States v. Williams, supra.*

they must acquit the accused, unless his conduct was service discrediting or contrary to good order and discipline. Certainly Irvin's conduct, as alleged in the child-abuse charge, could properly be considered service discrediting. In that event, the maximum punishment authorized would appear to be that which is allowed for the "closely related" offenses of assault on a child or, where grievous bodily harm is intentionally inflicted, the punishment authorized for that offense. *See* para. 127*c* (1), Manual, *supra.*

If, under the circumstances of this case, we affirmed the conviction of child abuse because it was service-discrediting conduct, an obvious problem of multiplicity arises: the child abuse consisted of assaults, but the court-martial found appellant guilty of those assaults under a separate charge. Although the child-abuse specification alleges that as a result of Irvin's misconduct the child suffered serious bodily injury and death, these allegations—which do not appear in the assault specification—do not eliminate the multiplicity problem. Instead, it would appear that if we upheld the child-abuse charge because it alleges service-discrediting conduct, then the charge of assault should be dismissed because it is included within the child-abuse allegations and proof.

## IV

In examining the extensive post-trial review, we have noticed this comment by the staff judge advocate:

> In my opinion the evidence is *not* sufficient to support a finding that the accused assaulted the child prior to 12 December 1979. There was testimony of prior bruises and injuries but no evidence to indicate that they were the result of a nonaccidental trauma or an assault by the accused. Some or all of the bruises or injuries could have been the result of accidents suffered by the child, disciplining by Sgt Irvin, the accused's husband, or a number of other people having contact with the child.

(Emphasis added.) Thus, instead of assaults "at divers times," as alleged, the Government—according to the staff judge advocate's review—had only established the occurrence of assaults on December 12, which was (a) the date on which Margaret received her fatal injuries and was taken to the hospital; (b) the date alleged in the murder charge; and (c) the terminal date for the assaults and child abuse, as alleged in those other charges.

The review does not state an opinion about whether appellant was guilty of child abuse at any time prior to December 12. However, because the proven child abuse consisted only of assaults, it would be difficult to see how the evidence—which was insufficient to prove that any assault had occurred before December 12—sufficed to show child abuse prior to that date.

In effect, the staff judge advocate's review concludes that the Government's evidence was sufficient only to establish misconduct on December 12, 1979. Nonetheless, the review did not recommend that the convening authority disapprove any part of the court-martial's findings that, "at divers times from on or about 18 October 1979 to on or about 12 December 1979," appellant had struck and abused the child. Instead, the staff judge advocate rendered the opinion that "[t]he findings are in proper form"; and presumably the convening authority accepted that opinion, for he approved the findings. *See United States v. Martinez,* 1 M.J. 280, 281 (C.M.A. 1976).

If the staff judge advocate's analysis of evidential sufficiency is accepted, then further remedial action would be required as to the findings. Appellant has been convicted of involuntary manslaughter committed by means of a fatal assault which occurred on December 12. If the child abuse consisted solely of assaults and no assaults occurred prior to December 12, then it would appear that the findings of guilty as to involuntary manslaughter would encompass the other offenses.[10]

---

**10.** The child-abuse specification alleges both intent and negligence; but even if those somewhat

## V

We have considered the record of trial in light of the other issue (*see* n. 5, *supra*) to determine whether any errors in the reception of evidence might have affected the findings of guilty. We are convinced that no taint exists. To supplement circumstantial evidence, the prosecution offered extensive medical testimony; but any excessive liberality on the judge's part in admitting this testimony was not prejudicial to appellant. The basic fact established by the doctors was that the child received fatal injuries which could not have been inflicted except by appellant, who was in charge of her at the time. The medical testimony made clear that the circumstantial evidence was inconsistent with any explanation of the child's injuries and death other than an assault and battery perpetrated on her by appellant.

## VI

The military judge instructed the court members that the maximum punishment for Irvin's offenses included 16 years' confinement. The Court of Military Review disagreed with this advice because it concluded that, under the findings, only 1 year's confinement was authorized for the child abuse, rather than the 8 years assigned to that offense by the judge. Appellant has already received some relief. 13 M.J. at 755. We believe that now, in fairness to appellant, the Court of Military Review should reexamine the findings and determine what remedial action should be taken as to the findings in light of the matters discussed in this opinion. Then,

they should reassess the sentence in light of that remedial action. However, we wish to make it perfectly clear that in this case we are not ruling that any change in the sentence is necessary, *cf. United States v. Suzuki*, 20 M.J. 248 (C.M.A.1985); and we are not holding that the sentence in its present form would be inappropriate, even if the court below concludes that only the conviction of involuntary manslaughter should be sustained.

## VII

The decision of the United States Air Force Court of Military Review is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for submission to that court for further review under Article 66, UCMJ, 10 U.S.C. § 866.

Thereafter, the record will be returned to this Court for final disposition.

COX, Judge (concurring):

I agree with the disposition of the charge under the Assimilative Crimes Act because trial counsel failed to prove the essential element of jurisdiction.*

I also agree that the military judge could have taken judicial notice of the fact of jurisdiction under Mil.R.Evid. 201, if otherwise appropriate under the rules.

I am also concerned by the staff judge advocate's comments about the sufficiency of the evidence. If the evidence is sufficient only to prove the fatal assault of December 12, then, as noted in the principal opinion, only the homicide charge can survive. That would be analogous to a charge of assault with intent to commit murder and a charge of the resulting homi-

---

contradictory allegations were construed to encompass intentional infliction of great bodily harm, it would appear that the court members did not find that this intent existed on December 12. Otherwise, presumably they would have convicted appellant of murder. *Cf. United States v. Varraso*, 21 M.J. 129 (C.M.A.1985.) Accordingly, if the evidence did not suffice to establish any assaults prior to December 12, it would signify that it did not establish the intentional infliction of any serious injury either.

* In light of the posture of the litigation and the motion by appellant at trial to dismiss the

charge, it is easy to conclude that this was never at issue and was waived. It was raised for the first time on appeal. When counsel attack jurisdiction for the first time on appeal, we should require that appellant allege that there was no jurisdiction. Then, we could review the record to examine whether there is a basis for the allegation. However, because the sentence as approved is within the statutory maximum for the infanticide, the issue is moot. In all likelihood, the assimilated charge was multiplicious with the assault and battery charge as the proof developed.

cide. The former is clearly lesser-included in the latter.

However, notwithstanding the staff judge advocate's review, my reading of the record convinces me that the Government proved its case of multiple assaults over a long period of time. It is, of course, a classic circumstantial-evidence case, as are practically all cases of child abuse (in this case, the multiple assaults, Additional Charge II). The record shows that appellant had the opportunity, the inclination, and the present ability to commit the assaults. The testimony and the photographs convince me that this child was battered, assaulted, beaten, and bruised over a long period of time and that the fatal blow was separate and distinct from the older, equally brutal and vicious blows.

I do agree with the remand to the Court of Military Review for a new look at the evidence in light of the staff judge advocate's review. And it is never inappropriate for the Court of Military Review to reconsider a sentence if appellate review has altered the posture of the case. As stated in the principal opinion, this does not require a change in the sentence but permits it.