# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

## No. ACM 40419

_____

### UNITED STATES
_Appellee_

**v.**

### Matthew S. HENDERSON
Technical Sergeant (E-6), U.S. Air Force, _Appellant_

_____

Appeal from the United States Air Force Trial Judiciary[1]

Decided 18 April 2025

_____

_Military Judge_: Elijah F. Brown.

_Sentence_: Sentence adjudged 26 May 2022 by GCM convened at Eielson Air Force Base, Alaska. Sentence entered by military judge on 30 June 2022: reduction to E-4, hard labor without confinement for 10 days, and a reprimand.

_For Appellant_: Major Frederick J. Johnson, USAF.

_For Appellee_: Lieutenant Colonel Jenny A. Liabenow, USAF; Lieutenant Colonel J. Pete Ferrell, USAF; Major Vanessa Bairos, USAF; Major Brittany M. Speirs, USAF; Major Kate E. Lee, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, ANNEXSTAD, and WARREN, _Appellate Military Judges_.

Judge WARREN delivered the opinion of the court, which Chief Judge JOHNSON and Senior Judge ANNEXSTAD joined as to parts I, II.A–B.2, III, and in the judgment.

_____

[1] Appellant appeals his conviction under Article 66(b)(1)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(b)(1)(A), _Manual for Courts-Martial, United States_ (2024 ed.).

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

WARREN, Judge:

A general court-martial composed of a military judge found Appellant guilty, contrary to his pleas, of two violations of Article 92(1), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892(1), for wrongfully attempting to develop a sexual relationship with a trainee (AM) and for wrongfully making sexual advances towards another trainee (DO) all while Appellant was an entry level trainer.[2,3] The military judge sentenced Appellant to a reduction to the grade of E-4, 30 days hard labor without confinement, forfeiture of $1,000.00 pay per month for two months, and a reprimand. The convening authority took no action on the findings but granted clemency by reducing the hard labor without confinement to ten days and disapproving the forfeiture of pay.

Appellant raises two issues on appeal, which we reworded as follows: (1) whether Appellant's convictions for violation of a lawful general regulation are legally and factually insufficient; and (2) whether 18 U.S.C. § 922's firearm regulation is constitutional as applied to Appellant.

For the reasons set forth below, we hold that Appellant's convictions are not factually sufficient because the Government failed to prove that the pertinent regulation, and the particular punitive provision therein, were in effect

———————————

[2] Unless otherwise indicated, all references to the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] The military judge found Appellant guilty by exceptions and substitutions of the each of the specifications concerning AM and DO, respectively. To wit, for AM's specification (Specification 1 of Charge I), he excepted the words "on divers occasions" and substituted therefor the words "on one occasion, when he asked [AM], 'When will you let me hit or smash?' or words to that effect." As to DO's specification (Specification 2 of Charge I), the military judge excepted the words: "sexual advances toward [DO]," and substituting therefor the words "a sexual advance toward [DO] when he said, 'Yes, if you sit on my face.'"

In addition, the military judge acquitted Appellant of four other offenses, including: (1) a third specification of violation of Article 92(1), UCMJ, for allegedly violating Air Force Instruction (AFI) 36-2710, *Equal Opportunity Program*, ¶ 2.1 (18 Jun. 2020); (2) one charge and specification of violation of Article 93, UCMJ, 10 U.S.C. § 893, for allegedly maltreating a male subordinate; (3) one charge and specification of violation of Article 120, UCMJ, 10 U.S.C. § 920, for alleged abusive sexual contact against a female; and (4) one charge and specification of violation of Article 120c, UCMJ, 10 U.S.C. § 920c, for alleged indecent exposure.

at the time of Appellant's charged misconduct with the trainees. The second assignment of error is therefore mooted by our disposition of the first.

Accordingly, we take action in our decretal paragraph to set aside the findings of guilty and sentence and dismiss Specifications 1 and 2 of Charge I with prejudice.

## I. BACKGROUND

A military judge sitting as a court-martial convicted Appellant of two specifications of violation of Article 92(1), UCMJ, for violating a lawful general regulation—Air Force Instruction (AFI) 36-2909, *Air Force Professional Relationships and Conduct*. Both specifications alleged he violated paragraph 4.2.1 of this regulation between on or about 1 October 2019 and on or about 31 December 2019 while he was serving as an entry level trainer. The first specification alleged that Appellant wrongfully attempted to develop a sexual relationship with AM, while the second specification accused Appellant of wrongfully making sexual advances towards DO.

Appellant served as a technical training instructor at Sheppard Air Force Base, Texas, between 2016 and 2020. After he transferred to Eielson Air Force Base, Alaska, allegations emerged that he had acted inappropriately towards some of his trainees in the fall of 2019 during "Phase II" of Appellant's training class, from late October to mid-December 2019. That fall, AM and DO were two of five female students in Appellant's 12-student training class.

In the course of AM and DO's training, Appellant made sexualized comments in front of the entire 12-person class, in addition to comments soliciting sex directed specifically to AM and DO. To the male students in the class Appellant bragged that he referred to himself as "Hendo Extendo" because (according to him) he had a large penis. Both AM and DO were in the classroom at the time, within five feet of Appellant, and heard these boasts. Appellant began his sexual advances towards AM during the beginning of "Phase II" of her technical school training. Appellant asked her when she was going to let him "hit" or "smash," terms which she understood as references to having sex. DO testified that, during the same November 2019 timeframe, that in response to her asking Appellant if she could sit out of a training activity, he responded, "Yes, if you sit on my face." Both incidents occurred while they were at work in the hangar and in the presence of other trainees. Both AM and DO were shocked at the sexual nature of Appellant's comments directed towards them, neither of them interpreted these remarks as "jokes," and both testified that those sexual advances were unwanted.

Testimony at trial established that these comments were uttered in the context of ongoing commentary by Appellant on AM and DO's respective sexual

attractiveness and desirability. During this timeframe, Appellant also made comments that AM was "out of [her boyfriend's] league." Sometime nearer to the Thanksgiving 2019 holiday, after Appellant discovered that AM and some classmates were renting an Air Bed and Breakfast house for the holiday, Appellant asked AM for the address, saying: "[I]f you send me the address, I'll give you extra credit, if, you, I guess, allow me to come." Appellant continued his verbal pursuits of AM after she graduated from technical school in December 2019, adding her as a friend on social media and asking her to send him photos (which she interpreted as a request that she send him nude photos).[4] As for DO, during the same Phase II of training when Appellant told her to "sit on [his] face," he also told her that she had "a good butt for a white girl."

However, neither AM nor DO could identify precisely when in "Phase II" this conduct occurred; instead, the record only establishes that it was sometime after the conclusion of Phase I, which concluded sometime in October 2019, and before the Thanksgiving 2019 holiday. What limited insight available as to the precise timing of the onset of Phase II emerges from the following portion of AM's testimony in response to assistant trial counsel's direct examination:

> Q. Can you describe how that course is taught, such as phases or classroom instruction, can you just describe that for the court please?
>
> A. Yes, ma'am. There's two phases. The first phase is what we call fundamentals, where you learn the basics of just maintenance, such as tools and basic safety. The second phase is when it's more of like job specific. You learn more about things that are hands on in the jet, like pylons, bombs, some of the racks we use for the jets as well and make sure we're both like textbook and hands-on ready.
>
> Q. And, do you remember the approximate dates of the phase II of that course?
>
> A. I don't remember the approximate dates. I want to say it's about two or three months for the Phase II.
>
> Q. Okay, and that was the fall of 2019?
>
> A. Yes, ma'am.

---

[4] We note that AM's perceptions are reinforced by the fact that Appellant's Snapchat profile name was "Hendo Extendo"—once again, Appellant's self-proclaimed moniker for his genitalia.

AM's answers lead to some clarifying questions from the military judge regarding this timeline:

> Q. So, from maybe September and October, you're undergoing training in fundamentals [Phase I], is that right?
>
> A. Yes, sir.
>
> Q. And, then, what are you doing the rest of the time?
>
> A. Phase II.

Based on this generic explanation in the record, Phase II commenced immediately after Phase I and ran through until the class graduation in mid-December 2019. While neither AM nor DO identified a specific day when the misconduct occurred, a review of the record shows it must have been sometime before Thanksgiving because Appellant's sexualized comments to AM and DO preceded Appellant asking DO for the address where she and some fellow students were staying for the Thanksgiving holiday.

At trial, the court admitted a ten-page excerpt from AFI 36-2909, *Air Force Professional Relationships and Conduct* (14 Nov. 2019), consisting of, *inter alia*, the cover page, table of contents, and the full text of the specific punitive provision charged, that being ¶ 4.2.1. This provision prohibited trainers or instructors from attempting to establish a sexual relationship with a trainee and making sexual advances towards a trainee. The Government did not request, and the military judge did not take, judicial notice of the existence of the prior version of that same regulation in effect from 27 April 2018 to 13 November 2019.[5] To further reinforce proof of Appellant's duty to refrain from such activities with trainees, the Government provided testimony from Master Sergeant (MSgt) EP, the instructor supervisor at Appellant's training squadron circa 2019. MSgt EP testified that all instructors had to attend training on equal opportunity, sexual harassment, and other topics telling training instructors how they should conduct themselves with trainees. This included specific instruction that trainers could not have any extracurricular relationships with trainees, with an emphasis on the prohibition against sexual relationships between trainers and trainees.

Ultimately, the military judge made special findings wherein he found Appellant guilty of the first specification for the comment to AM about "hitting"

---

[5] This appears to have been a purposeful decision by the trial counsel insofar as the Government originally attached both instructions to the preferral package and presented both instructions into evidence at the preliminary hearing in this case. The Government even originally listed the 2018 version of the AFI in the charging language for Specifications 1 and 2 of Charge I, but deleted it prior to arraignment in the case.

or "smashing" and found him guilty of the second specification for the comment to DO about "sitting on [his] face."

## II. DISCUSSION

Appellant argues that his convictions are factually and legally insufficient for two reasons: (1) because the Government failed to present evidence that the applicable punitive provision from the lawful general regulation (to wit: AFI 36-2909, ¶ 4.2.1) was in effect throughout the entire charged timeframe; and (2) Appellant's comments to AM of "when are you going to let me hit or smash" and to DO that she should "sit on [his] face" are, in Appellant's view, insufficient to prove an attempt to establish a sexual relationship and a sexual advance with either trainee. The Government answers that: (1) they proved the prior version of AFI 36-2909 included paragraph 4.2.1 by implication because the cover page of the 2019 version of the regulation specifically states that it supersedes the 2018 version of the regulation; and (2) that Appellant's comments were manifestly sexual and specifically intended by Appellant as such.

### A. Law

We review issues of legal and factual sufficiency de novo. *See United States v. Harrington,* 83 M.J. 408, 414 (C.A.A.F. 2023) (citing *United States v. King,* 78 M.J. 218, 221 (C.A.A.F. 2019)) (for legal sufficiency); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted) (for factual sufficiency standard for pre-January 2021 misconduct). "Our assessment of legal and factual sufficiency is limited to the evidence produced at trial." *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citing *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993)).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (citation omitted). "[T]he term 'reasonable doubt' does not mean that the evidence must be free from any conflict . . . ." *King*, 78 M.J. at 221 (citation omitted). "A 'reasonable doubt' is a conscientious doubt, based upon reason and common sense, and arising from the state of the evidence." *United States v. McClour*, 76 M.J. 23, 24 (C.A.A.F. 2017). "Proof beyond a reasonable doubt is proof that leaves the trier of fact firmly convinced of the accused's guilt." *Id.* (citation omitted). In short, proof beyond a reasonable doubt is proof that eliminates any real

possibility of the accused's innocence. *See id.* at 26 (citing Federal Judicial Center, Pattern Criminal Jury Instructions 28 (1987)).[6]

"[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). Thus, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *King*, 78 M.J. at 221 (alteration in original) (citation omitted). Ultimately, this court's legal sufficiency analysis "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This deferential standard impinges upon the factfinder's discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *United States v. Mendoza*, ___ M.J.___, No. 23-0210, 2024 CAAF LEXIS 590, at *9 (C.A.A.F. 7 Oct. 2024) (internal quotation marks and citation omitted).

For trials involving any convicted offenses committed before January 2021, "[t]he test for factual sufficiency is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *Rodela*, 82 M.J. at 525 (third alteration in original) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)) (construing the pre-January 2021 version of Article 66, UCMJ, 10 U.S.C. § 866). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*,

---

[6] The Military Judge's Benchbook describes the proof beyond a reasonable doubt standard as follows:

> A "reasonable doubt" is a conscientious doubt, based upon reason and common sense, and arising from the state of the evidence. . . . Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the accused's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the accused is guilty of the offense charged, you must find [the accused] guilty. If, on the other hand, you think there is a real possibility that the accused is not guilty, you must give [the accused] the benefit of the doubt and find [the accused] not guilty.

*Military Judge's Benchbook*, Dept. of the Army Pamphlet 27-9 at 49 (29 Feb. 2020).

76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018).

Finally, in assessing the evidence for factual and legal sufficiency, we, like the trier of fact at trial, are free to use our common sense and knowledge of the ways of the world. *See United States v. Menard*, ACM No. 40496, 2025 CCA LEXIS 137, at \*12 (A.F. Ct. Crim. App. 28 Mar 2025) (unpub. op.) (citing *United States v. Green*, 52 M.J. 803, 805 (N.M. Ct. Crim. App. 2000) (applying "common sense and knowledge of human nature and the ways of the world" in evaluating witness credibility as part of factual sufficiency review)).[7]

### 1. Violation of a Lawful General Regulation—AM

In order to convict Appellant of wrongfully pursuing a sexual relationship with AM while she was still a trainee, the Government was required to prove each of the following elements beyond a reasonable doubt: (1) that a punitive portion of a certain lawful general regulation was in effect (to wit: AFI 36-2909, ¶ 4.2.1); (2) that Appellant had a duty to obey that regulation; and (3) that Appellant violated the punitive portion of that lawful general regulation by wrongfully attempting to develop a sexual relationship with AM while Appellant was in the position of an entry level trainer. *See* Article 92(1), UCMJ; *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 18.b.(1); *see also United States v. LeBlanc,* 74 M.J. 650, 654 (A.F. Ct. Crim. App. 2015) (quoting *United States v. Shavrnoch*, 49 M.J. 334, 336 (C.A.A.F. 1998)) (holding only those portions of a lawful general regulation designated as punitive are chargeable as Article 92(1), UCMJ, violations). Pertinent to this case, the term "lawful general regulations" are defined as "those . . . regulations generally applicable to an armed force which are properly published by . . . the Secretary of . . . a military department . . . ." *MCM*, pt. IV, ¶ 18.c.(1)(a).

Knowledge of a general regulation "is not an element of this offense and lack of knowledge does not constitute a defense." *MCM*, pt. IV, ¶ 18.c.(1)(d). Nonetheless, at trial, the existence and content of the regulation will not be presumed—it must either be proven with evidence or established by judicial notice. *United States v. Paul*, 73 M.J. 274, 279 (C.A.A.F. 2014) (quoting *United States v. Williams*, 3 M.J. 155, 156 (C.M.A. 1977)). When taken, judicial notice must be explicit, and reviewing military appellate courts will *not* presume that a military judge took judicial notice "by implication." *Id.* at 279 n.9 (citing

---

[7] Exercising that common sense and knowledge of the ways of the world, we are aware that the phrase "when are you going to let me hit or smash," within the context Appellant made it to AM, refers to asking AM when she is going to let him have sex with her. Likewise, his retort to DO that she could "sit out" the training exercise if she "s[a]t on [his] face," in context, is a euphemism for a female resting her pubic area on a partner's face while the partner performs oral sex on her.

*United States v. Irwin*, 21 M.J. 184, 186 (C.M.A. 1986)). More pointedly, "while a [Court of Criminal Appeals (CCA)] might generally take judicial notice of an undisputed fact or question of domestic law that is important to the resolution of an appellate issue, it *cannot* take judicial notice of fact necessary to establish an element of the offense." *Id.* at 280 (emphasis added).[8]

### 2. Violation of a Lawful General Regulation—DO

In order to convict Appellant of wrongfully making sexual advances toward DO while she was a trainee the Government was required to prove each of the following elements beyond a reasonable doubt: (1) that a punitive portion of a certain lawful general regulation was in effect (to wit: AFI 36-2909, ¶ 4.2.1); (2) that Appellant had a duty to obey that regulation and the punitive provision concerned; and (3) that Appellant violated the punitive portion of that lawful general regulation by wrongfully making sexual advances toward DO while Appellant was in the position of an entry level trainer. *See* Article 92(1), UCMJ; *MCM*, pt. IV, ¶ 18.b.(1). The term "lawful general regulation" and the legal principles applicable to proof of an existing lawful general regulation have the same meaning as recited *supra*.

### 3. AFI 36-2909, Professional and Unprofessional Relationships (14 Nov. 2019)

Here the lawful general regulation and punitive provision concerned is AFI 36-2909, *Air Force Professional Relationships and Conduct*, ¶ 4.2.1. Two versions of this Instruction were in effect during the charged timeframe for this case (1 October 2019 – 31 December 2019). Both versions were duly published under the authority of the Secretary of the Air Force with effective dates of 27 April 2018 and 14 November 2019, respectively. The cover page of the 14 November 2019 version of the Instruction indicates that it "Supersedes: AFI 36-2909, 27 April 2018." The "summary of changes" section for the 14 November 2019 version also cautions the reader that "[t]his document has been substantially revised and must be completely reviewed." The introductory section for both versions directs that "[f]ailure to observe mandatory provisions of paragraph[ ] . . . 4.2.1 . . . is punishable under [A]rticle 92 . . . Uniform Code of Military Justice for Regular Air Force . . . ." Paragraph 4.2.1, which, in all of its numerous subparagraphs comprises nearly three pages of the Instruction, begins with the phrase, "Recruiters and trainers who provide entry level

---

[8] We note the Government's Appendix includes the predecessor version of AFI 36-2909 (27 April 2018), which contains an identical provision to paragraph 4.2.1. Nonetheless, as explained *infra*, we are not permitted to take judicial notice of this paragraph *now* to satisfy the Government's burden of proof which it failed to meet *at trial*. *See Paul*, 73 M.J. at 278 ("The problem in this case is that the CCA took the 'extraordinary step' of taking judicial notice of an element not proven by the Government.").

training, will not engage or attempt to engage in any of the following prohibited activities." The following subparagraphs set out specific behavioral expectations for trainers. Pertinent to this case, paragraph 4.2.1.1 prohibits an entry level trainer from "[d]evelop[ing], attempt[ing] to develop, or conduct[ing] a . . . sexual relationship with . . . a trainee," and paragraph 4.2.1.3 prohibits "[m]ak[ing] sexual advances toward . . . a trainee."

To determine whether a given communication was sexual in nature, we "examine the entire record of trial to determine the precise circumstances under which the charged language was communicated." *United States v. Green*, 68 M.J. 266, 270 (C.A.A.F. 2010) (citation omitted) (holding that the sounds "mm-mm-mm" when communicated from Appellant to his female coworker as he was looking down her blouse at her breasts constituted indecent language).

While neither paragraph 4.2.1 nor the subparagraphs at issue here impose a specific mens rea for the acts concerned, consistent with the direction of the United States Court of Appeals for the Armed Forces (CAAF), military courts must impose a minimum mens rea to prohibitions contained in a general order or regulation to separate criminal from innocent conduct. *See United States v. Haverty*, 76 M.J. 199, 207, 205 (C.A.A.F. 2017) (applying a mens rea of "recklessness" to the Army general regulation prohibiting hazing after "read[ing] into the . . . regulation 'only that mens rea which is necessary to separate wrongful conduct from otherwise innocent conduct'") (quoting *Elonis v. United States*, 573 U.S. 723, 736 (2015)); *United States v. Gifford*, 75 M.J. 140, 146 (C.A.A.F. 2016) (applying a recklessness mens rea to violation of a general order prohibiting providing alcohol to persons under the age of 21).[9] Accordingly, to be convicted of violating this particular lawful general regulation, Appellant must have acted with reckless disregard for the fact that DO and AM were trainees at the time, and that his comments and advances towards them were sexual in nature.

### 4. Lesser Included Offenses

In the event this court should find an offense factually or legally insufficient, this court is still authorized to affirm a lesser included offense (LIO)

---

[9] We impute a "recklessness" standard here in an abundance of caution only. We note that neither *Haverty* (hazing) nor *Gifford (*providing alcohol to persons under the age of 21) involved the type of conduct at issue here. *Haverty*, 76 M.J. at 202; *Gifford*, 75 M.J. 141. By contrast, in evaluating misconduct analogous to the case at bar that involved improper sexual commentary directed by a superior to a subordinate (albeit in an Article 93, UCMJ, 10 U.S.C. § 893, case), the CAAF held that general intent suffices because "there is no scenario where a superior who engages in the type of conduct prohibited under Article 93, UCMJ, can be said to have engaged in innocent conduct." *United States v. Caldwell*, 75 M.J. 276, 281 (C.A.A.F. 2016).

thereto. Article 66(f)(1)(A)(i), UCMJ, 10 U.S.C. § 866(f)(1)(A)(i). Accordingly, a review of potential LIOs is appropriate in this case. Prior military caselaw held that Article 92(3), UCMJ, was an LIO of Article 92(1), UCMJ. *See, e.g., Shavrnoch*, 49 M.J. at 336 (citation omitted); *United States v. Bivins*, 49 M.J. 328, 333 (C.A.A.F. 1998) (affirming our court's decision that Article 92(3), UCMJ, was an LIO in part because it was "closely related" to Article 92(1), UCMJ);[10] *United States v. Hode*, 44 M.J. 816 (A.F. Ct. Crim. App. 1995).

While none of those cases have been explicitly overruled to date, our superior court's subsequent decision in *United States v. Jones* appears to overrule them by implication because, as the CAAF clarified in *Jones*, to qualify as an LIO the lesser offense's elements must be "a subset of the greater offense alleged." 68 M.J. 465, 468 (C.A.A.F. 2010) (quoting *United States v. Medina*, 66 M.J. 21, 26–27 (C.A.A.F. 2008)). While knowledge of the underlying duty is *not* an element under Article 92(1), UCMJ, knowledge of the underlying duty *is* an element under Article 92(3), UCMJ, dereliction of duty. *See MCM*, pt. IV, ¶ 18.b.(3)(b) (requiring that an accused either knew or reasonably should have known of the applicable duty). Accordingly, under our superior court's articulation of the elements test in *Jones*, we are compelled to part ways with our prior precedent and conclude that Article 92(3), UCMJ, is no longer an LIO of Article 92(1), UCMJ. *See also United States v. Kiriou*, ARMY 20081064, 2010 CCA LEXIS 41, at *4 (A. Ct. Crim. App. 8 Apr. 2010) (unpub. op.) (holding Article 92(3), UCMJ, is not an LIO of Article 92(1), UCMJ).[11]

---

[10] We note that the "closely related offense" doctrine was a less exacting corollary to, but distinct from, the actual Article 79, UCMJ, 10 U.S.C. § 879, "lesser included offense" standard. Whereas the lesser included offense doctrine requires the elements of a greater offense to subsume the elements of the lesser, the closely related offense doctrine did not. *See United States v. Morton*, 69 M.J. 12, 15 (C.A.A.F. 2010) (citations omitted). CAAF has since explicitly disavowed the closely related offense doctrine as inconsistent with the lesser included offense doctrine and at odds with "traditional due process notions of fair notice." *Id.* at 16. Accordingly, in the event this court were to overturn an Article 92(1), UCMJ, offense as factually or legally insufficient, this court is no longer authorized to affirm that conviction even where the evidence at trial would otherwise be sufficient to prove up an (uncharged) Article 92(3), UCMJ, dereliction of duty offense.

[11] We also note the President has additional authority under Article 79(b)(2) and (c), UCMJ, 10 U.S.C. §§ 879(b)(2), (c), to designate additional LIOs which he deems "reasonably included" in a greater offense, even if that offense is not "necessarily included" in the greater offense by virtue of the *Jones* test. *See MCM*, pt. IV, ¶¶ 3.b(1), 3.b(3). That is to say, by design, "the President's express authority under Article 79[, UCMJ,] to designate certain closely related offenses to be 'reasonably included' lesser offenses

**B. Analysis**

We conclude that Appellant's convictions are factually insufficient solely because the Government failed to offer sufficient proof that the lawful general regulation provisions concerned, to wit: AFI 36-2909, *Professional and Unprofessional Relationships*, ¶ 4.2.1, was in effect at the time of Appellant's misconduct directed at AM and DO, respectively. Accordingly, for the reasons set forth below, we overturn those convictions because at trial the Government only proved the existence of the lawful general regulation provision for misconduct that took place on or after 14 November 2019, and there is a real possibility that all the misconduct charged here occurred *prior* to 14 November 2019.[12]

**1. Factual Sufficiency**

To prove Appellant guilty the Government had a burden to prove that the lawful general regulation and particular punitive provision concerned therein were in effect at the time of the charged misconduct. *See MCM*, pt. IV, 18.b.(1)(b). While the Government's proof at trial established that Appellant made the charged sexualized communications to his trainees within the charged timeframe *sometime* between 1 October to 31 December 2019, this avails the Government naught at this trial because here the Government only presented proof that the applicable lawful general regulation and particular punitive provision therein, AFI 36-2909, ¶ 4.2.1, were in effect as of 14 November 2019. Thus, the Government's limited proof functionally shrank their charging window from 1 October to 31 December 2019, to 14 November to 31 December 2019.[13]

---

of greater ones, including offenses that do not strictly meet the 'necessarily included' elements test." *MCM*, App. 17, *Analysis of Punitive Articles*, at A17-1, ¶ 3. However, to date the President has not exercised the authority under Article 79(b)(2), UCMJ, to designate Article 92(1), UCMJ, as an LIO of Article 92(3), UCMJ.

[12] We do not reach the issue of legal insufficiency in this case because our resolution of the case on the basis of factual insufficiency renders Appellant's allegations of legal insufficiency, moot.

[13] Judge Warren writes alone for purposes of this footnote. Consistent with his concurring opinion in *United States v. Patterson*, No. ACM 40426, 2024 CCA LEXIS 399 (A.F. Ct. Crim. App. 27 Sep 2024) (unpub op), *cert. filed*, __ M.J. __, No. 25-0073/AF, 2025 CAAF LEXIS 16 (C.A.A.F. 6 Jan. 2025), Judge Warren wishes to distinguish this conclusion from his reasoning in his concurring opinion in *Patterson*, namely: that the date of an offense is generally *not* an element of the offense. *See Patterson*, unpub. op. at *58–59 (Warren, J., concurring in part and concurring in judgment) (citations omitted). He stands by that analysis. The difference here is that the elements for Article 92(1), UCMJ, require the Government to prove that the lawful general regulation concerned

The Government never asked the military judge to take judicial notice of the predecessor version of AFI 36-2909, that was in effect from 27 April 2018 to 13 November 2019, and no government witness ever referenced a predecessor version. While the Government urges us to conclude that the military judge *implicitly* took judicial notice of the predecessor version because the cover page of the 14 November 2019 version of AFI 36-2909 notes that it "[s]upersedes[ ] AFI 36-2909 (27 April 2018)," caselaw forbids such a course. *See Paul*, 73 M.J. at 279 n.9 (citation omitted) ("[T]his Court has dismissed the notion that a military judge could take judicial notice 'by implication' . . . ."). Moreover, even if we were to disregard precedent and hold that the military judge could take judicial notice by implication, here even that implication would not suffice. The only implication that could be drawn is that a version of AFI 36-2909 existed circa 27 April 2018—but that is only half of the equation. The Government had to do more than to prove a version of AFI 36-2909 was in existence during Appellant's misconduct—they also had to prove that the specific punitive provision within AFI 36-2909, specifically paragraph 4.2.1, existed and prohibited the same conduct in the predecessor version. *See LeBlanc*, 74 M.J. at 654 (holding specific provisions in general regulations must be denominated as punitive to qualify for prosecution under Article 92(1), UCMJ). Nothing in the brief "supersedes" phrase relied upon by the Government satisfied that requirement. Moreover, while the appendix to the Government's brief contains the predecessor version, and thus we are now generally aware that an identical version of paragraph 4.2.1 was in existence from 27 April 2018 to 13 November 2019, as a matter of law we are *not* permitted to take judicial notice of that domestic law now for the first time on appeal, because that judicial notice goes directly to "an essential element that was not established in the Government's case" at

---

was in effect during the date of the charged misconduct. In that sense, Article 92(1), UCMJ, is one of those rare instances where "the date is of the essence" and functionally becomes an element.

However, in Judge Warren's opinion, offenses where the date is truly of the essence are the exception and not the rule. *See United States v. Williams*, 40 M.J. 379, 382 (C.M.A. 1994) (citations omitted) (stating that "[c]ourts have consistently held that unless the date is an essential element of the offense, an exact date need not be alleged"); *United States v. Gehring*, 20 C.M.R. 373, 376 (C.M.A. 1956) (citation omitted) ("generally time is not of the essence of an offense"); *United States v. Brown*, 16 C.M.R. 257, 62 (C.M.A. 1954) ("[W]here time is *not* of the essence, it is the general rule that an erroneous statement of the date of the offense constitutes a matter of mere form, and amendments are freely permitted where they do not operate to change the nature of the crime charged."). Generally speaking, it still remains the case that the date of an offense does not become a statutory element of the offense just because a date is listed in the charging language. *See Patterson*, unpub. op. at *61 (Warren, J., concurring in part and concurring in judgment) (citation omitted).

trial. *See Paul*, 73 M.J. at 280. Accordingly, the Government's case fails unless the charged misconduct occurred on or after 14 November 2019.

Here the Government's proof does not convince us beyond a reasonable doubt that all the convicted misconduct occurred on or after 14 November 2019. There is nothing in the record to eliminate the possibility that the charged statements were made prior to 14 November 2019. After an impartial review of all the evidence and operating under neither an inference of guilt nor innocence, we are left with a real possibility that Appellant's misconduct occurred sometime before 14 November 2019. As recited above, neither AM nor DO were able to pinpoint with specific accuracy the timing of Appellant's misconduct, beyond the fact that they know it happened during Phase II of their training. The evidence at trial established only that Phase I of training ended sometime in October. None of the parties invested much time in establishing a firm timeline at trial, content to merely establish the misconduct occurred during Phase II of training and prior to Thanksgiving. However, this lack of specificity is now fatal for the Government on appeal.

To summarize, the timing of the accused's misconduct must overlap with proof that the lawful general regulation concerned was then in effect. Because the Government's proof at trial only established the existence of AFI 36-2909, ¶ 4.2.1 circa 14 November 2019, but did not eliminate the real possibility that Appellant's misconduct occurred *before* 14 November 2019, we cannot conclude beyond a reasonable doubt that Appellant's convictions are factually sufficient.

### 2. No Applicable LIOs

Having concluded that Appellant's convictions are factually insufficient, we next consider whether this court could affirm Appellant's manifest misconduct on an LIO theory of "dereliction of duty" in violation of Article 92(3), UCMJ. While the Government failed to prove at trial that there was in existence before 13 November 2019 AFI 36-2909 and paragraph 4.2.1 prohibiting Appellant's misconduct, this itself does not mean Appellant's actions were non-criminal—it simply means the Government's proof is insufficient to prove the particular theory of violation of a lawful general order under Article 92(1), UCMJ. The Government's proof *did* establish the existence of a duty for entry level trainers to refrain from making sexual remarks towards and pursuing sexual relationships with trainees. MSgt EP's testimony, combined with evidence of AFI 36-2909, demonstrated the existence of duty established by regulation, custom, and training. Nonetheless, notwithstanding that Appellant's conduct and the Government's proof meet the elements of a dereliction of duty offense, our superior court's lesser included offense analysis in *Jones* makes clear that Article 92(3), UCMJ, is no longer an LIO of Article 92(1), UCMJ. This is so because Article 92(3), UCMJ, contains an additional element which 92(1), UCMJ, lacks:

14

the element requiring that Appellant actually knew or reasonably should have known of his duty.

### 3. Clarification of Ruling

To be clear, no one should confuse our holding that Appellant's convictions are factually insufficient as any sort of exoneration of Appellant—it is not. To the contrary, the record is clear that Appellant wrongfully made sexually explicit advances towards two trainees under his supervision while he was serving as an entry level trainer in between October and November 2019. Those comments were unwarranted, unprofessional, and by dint of AFI 36-2909, ¶ 4.2.1, and Article 92(1), UCMJ, criminal. Indeed, as our superior court observed (in a related context) there is a "unique and long-recognized importance of the superior-subordinate relationship in the United States armed forces," and its flouting can create "deeply corrosive effect[s] . . . on the military's paramount mission to defend our Nation." *United States v. Caldwell*, 75 M.J. 276, 281 (C.A.A.F. 2016).

Relatedly, this court in no way condones Appellant's demonstrably unprofessional conduct. Rather, our holding is a result of our duty to require the Government fulfill its burden of proof for every element of a convicted offense. While Appellant shirked his duties, we will not abandon ours—for while devotion to duty may not always be pleasant, for a servicemember, it is always necessary.

In the end, our holding simply concludes that the Government failed to admit readily available proof of punitive regulations covering the *entire* timeframe where the evidence at trial established Appellant's misconduct occurred. Such proof is necessary to sustain an Article 92(1), UCMJ, conviction.

### III. CONCLUSION

Accordingly, the findings of guilty and the sentence are **SET ASIDE**. Specifications 1 and 2 of Charge I are **DISMISSED WITH PREJUDICE**. All rights, privileges, and property of which Appellant has been deprived by virtue of the findings and sentence set aside by this decision, are hereby ordered restored.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

15